# Amos Green *et al.*, Appellants, *v.* John W. Wardwell *et al.*, Appellees.

### APPEAL FROM ADAMS.

An official bond of a justice of the peace is obligatory from the time it is left with the clerk for approval, if it is not rejected by him, although he omits to approve.

The sureties upon an official bond of a justice of the peace will be held liable so long as he performs the duties of the station, without reference to the regularity of his election, commission or eligibility.

The board of supervisors, where township organization is adopted, legally succeeds to the County Commissioners' Court, and may bring suit on the bond of a justice of the peace.

The official bond of a justice of the peace *de facto*, is an obligatory instrument.

THIS cause was submitted to SKINNER, Judge, of the Adams Circuit Court, without the intervention of jury, at April term, 1854, of said court. The court found that the bond mentioned in the declaration was the act and deed of the defendants, and that the breaches in the declaration were well- assigned, and gave judgment for plaintiffs. Defendants below appealed.

WHEAT and GROVER, for Appellants.

WILLIAMS and LAWRENCE, for Appellees.

CATON, J. This was an action of debt on an official bond against a justice of the peace and his sureties, assigning as a breach, his failure to pay over money which the justice had collected in his official capacity. The suit is brought in the names of the supervisors, as the board of supervisors of Adams county, as successors in office of the county commissioners of Adams county, to whom and their successors, as the statute required, the bond was made payable. The questions presented arise upon demurrers to the pleas, of which it is only necessary to notice those relied upon in the argument; which are, first, that Hobbs was not duly elected a justice of the peace; second, that the bond sued on was not duly approved; third, that he was not sworn as a justice of the peace; fourth, that he was not duly commissioned; fifth, that the notes and accounts on which the money sued for was collected, were not left with him as a justice of the peace; sixth, that, at the time the money was received, he was not a justice of the peace in manner and form as alleged in the declaration. To these several pleas a demurrer was sustained, which is now assigned for error.

Upon these pleas two questions arise. First, whether any liability can arise upon the official bond of a justice of the peace before it is actually approved by the county clerk, as required by the statute; and, second, whether the sureties of a justice of the peace de facto, are liable upon their bond; or, in other words, whether the official bond of a justice of the peace de facto, is an obligatory instrument. We have no hesitation in answering both questions in the affirmative, and that the demurrer was properly sustained. When the bond was executed by the parties and delivered to the clerk for his approval, it became obligatory, unless it was actually disapproved by him. His mere non-action on the subject did not deprive the justice of his power to act, nor did it absolve his sureties from their undertaking that he should act with fidelity. Both he and they had done all they could to comply with the law, so that he might legally discharge his official duties. The mere omission of the clerk to discharge

his duty, in formally approving the bond, should not be held to prejudice the public, or those who resorted to, or were brought before him, to submit to his adjudications. If the clerk was not satisfied with the sureties it was his duty to disapprove of the bond, so that the justice might find other and satisfactory sureties. If this was not done, upon principle, the bond became obligatory to secure the rights of the public and third persons. The clerk, indeed, might be prosecuted for a misdemeanor, for having neglected to perform an official duty, to formally pass upon the sufficiency of the bond. But the bond itself we have no doubt was binding upon the parties from the moment it was delivered to the clerk.

The other question is, if possible, attended with less difficulty. The public is not bound to inquire into all the technical questions which may affect the right of the officer to the office which he holds. Although he may have been elected by illegal votes, or may have been ineligible to the office; although the great seal of State may not have been impressed upon his commission, or although even no commission at all may have been issued to him, or although he may never have taken an official oath, or although he may have been elected to the legislature, which is an office incompatible with that of justice of the peace, still, so long as he continued to discharge the duties of a justice of the peace, and held himself out to the world as such, his official acts were binding, not only upon suitors, but also upon his sureties, and they continued bound upon their obligation. By signing his bond they acknowledged his right to the office, and to discharge its duties, and as such, recommended him to the public. They, at least, shall not be heard to say, that although they signed his bond, and thereby induced others to put money in his hands, relying on their bond for its safety, still he was not elected, was not commissioned, was not sworn; that he was not, in fact, a justice. If he had ceased to be a justice, the plea should have shown how he had ceased, so that the court, seeing the facts, could determine, as a matter of law, whether or not he was still a justice. While he acted as such, and as such collected this money, he must be regarded as an officer *de facto*, although, as the plea states, he had been elected to another office, which, in point of law, rendered him ineligible to the office of justice of the peace.

I may notice separately one of these pleas, which attempts to present a different question; and that is the one in which it is said that the notes and accounts were not left with him as justice of the peace. It is of no moment in what capacity he received the evidences of the debts. The question is, in what capacity did he receive the money? The declaration charges him with

receiving the money as a justice of the peace, and this is not denied by the plea.

But admitting the legal liability of the defendants upon the bond, they propose to carry the demurrer back to the declaration, and insist that the suit is not properly brought in the name of the board of supervisors as successors to the County Commissioners' Court. We think this objection fully answered by this court in the case of *The People* v. *Thurber*, 13 Ill. 554. I do not now feel called upon again to examine the legislation and legislative intent relating to the adoption of the township organization, and the changing of the county governments from one form to the other. The board of supervisors were the legal successors to the County Commissioners' Court, and, as such, succeeded to the legal title to this official bond. We think the suit was properly brought. There was no error in sustaining the demurrer to the pleas, and the judgment of the Circuit Court must be affirmed.

SKINNER, J., having tried this cause as judge of the Circuit Court, did not participate in the decision in this court.

*Judgment affirmed.*