Sprowl v. Lawrence.

# SPROWL vs. LAWRENCE.

[ACTION ON SHERIFF'S BOND.]

1. *Judicial notice of time.*—Courts will take judicial notice of the coincidence of the days of the months with days of the week, as shown by the almanac.

2. *Difference between common-law and statutory bonds.*—When a bond is valid only as a common-law obligation, and is not governed by the statutory provisions respecting remedies on official bonds, a suit can only be maintained upon it in the name of the obligee, and there can be but one recovery upon it; while, under the provisions of the Code, (§§ 2154, 131,) any person aggrieved may sue in his own name for the breach of an official bond, and such bond is not discharged by a single recovery; but bonds under which public officers have acted, and which are within the provisions of section 132, though not strictly official bonds, are subject to the same remedies as official bonds.

3. *Construction of statutes.*—A remedial statute must be construed largely and beneficially, so as to suppress the mischief, and advance the remedy; and if the words are not clear and precise, such construction will be adopted as shall appear the most reasonable and the best suited to accomplish the object of the statute, and a construction which would lead to an absurdity will be rejected.

4. *Informal bonds of public officers.*—Section 132 of the Code, respecting informal bonds under which public officers have acted, applies not only to bonds which are "not in the penalty, payable and conditioned as prescribed by law," but also to bonds which *are* in the penalty, payable and conditioned as prescribed by law, but which were not executed, approved and filed within the time prescribed by law.

5. *Validity of acts and bond of public officer de facto.*—The acts of a sheriff *de facto,* or any other public officer, who comes into office under color of an election, when they concern either the public or third persons who have an interest in the thing done, are as valid as the acts of an officer *de jure;* and in an action on a bond given by him, conditioned for the faithful discharge of the duties of the office, neither he nor his sureties can be heard to question his right to the office.

6. *Forfeiture of public office.*—The failure of a public officer to give bond within the time prescribed by law, (Code, § 125,) only renders him liable to a proceeding for the forfeiture of the office, but does not, *per se,* operate his instantaneous removal from it.

7. *Delivery and acceptance of bond.*—If the bond of a public officer is executed and delivered to the approving officer after the expiration of the time prescribed by law, although he may then have no authority to approve or accept it as a statutory bond, it will be upheld as valid, for the benefit of third persons who may be interested in the discharge of the official acts performed under it.

8. *Sufficiency of complaint.*—The form of complaint prescribed by the Code, (p. 553,) in actions "on bonds with conditions," applies only to bonds which are valid on their face; but in an action on the bond of a public officer, in the name of the party injured by the breach, if the complaint shows that the bond was not executed and filed until after the expiration of the time prescribed by law, it must also aver that the bond was delivered, and that the officer acted under it.

APPEAL from the Circuit Court of Pickens.
Tried before the Hon. WILLIAM S. MUDD.

THE amended complaint in this case was as follows:

"John M. Sprowl ⎱ The plaintiff claims of the de-
       *vs.*       ⎰ fendants the sum of one hundred
C. D. Lawrence, *et al.* and thirty 94-100 dollars, with interest thereon from the 8th November, 1853, as damages for the breach of a bond made by them and one Tandy P. Duncan, now deceased, on the 20th day of August, 1853, in a penalty of ten thousand dollars, with the following condition, to-wit: 'The condition of the above obligation is such, that whereas the above-bound Tandy P. Duncan was, on the first Monday in August, 1853, duly elected sheriff of Pickens county, in the State of Alabama, for the three years next to come; now, if the said Tandy P. Duncan shall well and faithfully discharge the duties of the office of sheriff as aforesaid, *or hereafter to be described by law,* (?) during the time he continues in said office or discharges any of the duties thereof, then this

obligation to be void, otherwise it 'shall remain in full force and effect.' And the plaintiff avers, that the condition of said bond has been broken, in this: that on the same day said bond was made as aforesaid, the said Tandy P. Duncan entered upon the discharge of the duties of sheriff of said county of Pickens, and continued in the discharge thereof until his death, which occurred on the 18th day of April, 1856; that while in the discharge of such duties, on the 27th October, 1853, the said plaintiff recovered a judgment in the circuit court of said county of Pickens, against one James Garrett, for the sum of six hundred and fifty-five 94-100 dollars, besides costs of suit; that on the 8th day of November, 1853, the said plaintiff transferred to one Benjamin Nevitt the sum of five hundred and twenty-five dollars, a part of said judgment, leaving a balance due thereon to said plaintiff of one hundred and thirty 94-100 dollars; that afterwards, to-wit, on the 6th day of May, 1854, an *alias* writ of *fieri facias* was issued by the clerk of said court on said judgment, returnable to the then next term of said court, which went into the hands of said Tandy P. Duncan, as sheriff as aforesaid, on the same day of its issue; that afterwards, to-wit, on the 6th day of October, 1854, before the return day thereof, and whilst the same was of full force, the said Tandy P. Duncan, as sheriff as aforesaid, received all the money due on said writ of *fieri facias*, to-wit, the sum of one hundred and thirty 94-100 dollars, with the interest due thereon, and afterwards returned said writ into the office of the clerk of said circuit court, with his endorsement thereon as follows, to-wit, 'Satisfied in full;' that after said Duncan had so received said money on said *alias* writ of *fieri facias*, and had returned said writ satisfied, to-wit, on the 26th day of January, 1856, the said money was duly demanded of said Duncan, sheriff as aforesaid, by one Hugh W. McAllister, who was authorized by plaintiff to do so, and to receive the said money; but that the said Duncan failed and refused to pay over the same, or any part thereof, to him, or to the plaintiff, and the same remains wholly unpaid."

The defendants demurred to the amended complaint,

and assigned the following causes of demurrer: "1st, that the alleged bond, described in said amended complaint, was not made and filed in the office of the judge of probate of said county, within fifteen days after the alleged election of said Tandy P. Duncan, as sheriff of said county; 2d, that the office of said Tandy P. Duncan, as sheriff of said county, at the date of said alleged bond, was vacated, and said Duncan, at the time said alleged bond was made, had no legal right to make, nor had the judge of probate of said county any legal authority to receive and file the same in his office; 3d, that said Duncan, at the time said alleged bond was made and filed in the office of the judge of probate, was not sheriff of said county; 4th, that said amended complaint does not state that said alleged bond was ever filed in the office of the judge of probate of said county; 5th, that said amended complaint does not state that said alleged bond was delivered to, and approved by the judge of probate of said county, or that it was delivered to, or received and approved by, any other person authorized to receive and approve the same; 6th, that said complaint does not show any legal right in the plaintiff to sue on the alleged bond in his own name, or to sustain any action on the same in his own name; and, 7th, that the breach of the condition of the alleged bond is not sufficient in law to authorize a recovery by the said plaintiff in this case, as the same is assigned in said complaint."

The court sustained the demurrer to the complaint, and the plaintiff was thereupon compelled to take a nonsuit, which he now moves to set aside; assigning as error the said ruling of the court, to which he reserved a bill of exceptions.

TURNER REAVIS, with whom were S. F. HALE and H. S. SHELTON, for the appellant:

I. The bond is valid, either as a statute bond, or as a common-law bond, and acceptance of it will be presumed, for these reasons:

1. Section 686 of the Code, which requires the sheriff before entering upon the duties of his office, to give bond,

&c.; section 123, which requires the bond to be filed in the office of the probate judge, within fifteen days after the election or appointment; and section 125, which declares the office vacant on failure to file the bond within that time, and requires the probate judge to certify such failure to the governor, are directory merely, and impose as a penalty for non-compliance a forfeiture of the office only in a certain event, to-wit, when the probate judge certifies the failure to give the bond within the time prescribed. Consequently, if there be a failure to execute or file the bond within the time prescribed, and the probate judge does not certify the failure; and the sheriff executes a bond after the time prescribed, and enters upon the duties, and occupies the office under such bond, having been elected to the office, he becomes at least sheriff *de facto*, if not *de jure;* and such bond is good as a common-law bond, at least, and the sheriff and his sureties are liable for a breach of its condition.—McWhorter v. McGehee, 1 Stewart, 546; The State v. Toomer, 7 Rich. 216; Treasurer v. Stevens, 2 McCord, 107; Stephens v. Crawford, 1 Kelly, (Geo.) 574; Crawford v. Howard, 9 Geo. 314; Jones v. Scanland, 6 Humph. 195; Iredell v. Barbee, 9 Ired. 250; State v. McAlpin, 4 Ired. 140; Supervisors v. Coffenbury, 1 Mann. (Mich.) R. 355; Gathwright v. Calloway, 10 Miss. 664; State v. Thomas, 17 Miss. 503; 2 Brock. 96; 12 Wheaton, 64.

2. The complaint shows, that Duncan was either sheriff *de jure*, or *de facto*. He was sheriff *de jure*, because he had been duly elected to the office, and had given bond conditioned for the faithful discharge of its duties. Having been elected, and having given bond, he was, *prima facie*, rightfully in office; and the contrary could only be made to appear by the certificate of the probate judge, that he had failed to file the bond in time, or by a judgment of ouster upon a writ of *quo warranto*. In the absence of such certificate, or such judgment, there could be no vacancy. If he was not sheriff *de jure*, he was *de facto*. He had been duly elected to the office. This gave him color of title; and he continued in the discharge of its duties, under his election, and under the bond sued

upon, *prima facie*, with the assent of the public authorities, for a sufficient length of time to afford individual citizens and the people generally a strong presumption that he was legally in office. Under these circumstances, all his acts were as valid, and he and his sureties were under the same responsibilities, as if he had been sheriff *de jure*. If his acts were so far valid, that his receiving money on an execution was a satisfaction of the judgment on which it issued, surely he and his sureties must be liable for his refusal to pay it over.—Burke v. Elliott, 4 Ired. 355; Gilliam v. Reddick, 3 Ired. 368; Douglass v. Terrell, 11 Ala. 583; also, the authorities last cited.

3. If Duncan had no right to give the bond, after the expiration of fifteen days from the day of his election, the sureties who signed one executed after that time were bound to know it, when they became his sureties. Having signed the bond with this actual or presumed knowledge, and, for more than two years, permitted him to discharge the duties of the office under that bond, it would be allowing them to commit a fraud upon the public, to permit them afterwards to deny their liability upon the bond. They are, therefore, estopped from doing so. Robertson v. Coker, 11 Ala. 466; May v. Robertson, 13 Ala. 86; also, the authorities cited above.

4. The bond is valid under sections 132 and 2154 of the Code: first, because it is within the intent of those sections; and, secondly, because it is within the letter. It is within the intent, because those sections were evidently designed to embrace every bond under which a person acts as a public officer. It is fairly to be inferred from the language of section 132, that the omission to file the bond would not affect its validity. It is within the letter of section 132, because it is not *conditioned* as prescribed by law. It has the condition prescribed by law, and also a superadded condition. The condition prescribed by law is, "faithfully to discharge the duties of such office during the time he continues therein, or discharges any of the duties thereof."—Code, § 118. The condition of the bond sued upon is, faithfully to discharge the duties of sheriff," " *or hereafter to be described*

*by law,*" &c. Moreover, if an official bond be not *filed* in time, can it be said to be in the penalty, payable, and conditioned as prescribed by law, within the intent and meaning of section 132 ? It is within the letter of section 2154, because that section authorizes an action on *any* bond *given in an official capacity*, as well as on *any official* bond. This bond was manifestly given in *an official capacity*, if it is not an official bond.

The case of the State v. Shirley, relied on by the appellees to show that the bond sued upon is void for want of delivery, is not like this. In that case, *the State had no interest in the bond, as a State.* The bond was made *solely* for the interests of individuals. For that reason, acceptance of the bond was not presumed. The bond in this case is. made *to secure the interests of the State*, as well as of individuals. The State is interested in the condition of the bond being performed, in collecting and paying over fines and forfeitures; in the arrest, imprisonment, and prevention of the escape of offenders against the laws; in the execution of convicts sentenced to death; in the summoning of jurors and witnesses in state cases; and, indeed, in the performance of the condition, by the performance of all the duties of the office of sheriff, in the administration of public and private justice. Not so in the case of the constable's bond, like that in Shirley's case. Upon the very principles laid down in Shirley's case, the bond in this case is valid; for, in that case, it is expressly said, that a bond for the benefit of the State may be taken by an unauthorized person, and acceptance by the State will be presumed. And this principle is re-affirmed in the case of the Sstate v. McAlpin, 4 Ired. 140. Moreover, in this last case, the authority of Shirley's case is greatly shaken; it is departed from, and, in fact, overruled, in the case of Iredell v. Barbee, 9 Ired. 250 ; and it is in conflict with the great weight of authority.

II. The questions, whether this is the official bond of Duncan, and whether it is void for not having been given and filed within fifteen days after his election, cannot be determined upon the demurrer to the complaint, because, ror all appears to the contrary, Duncan filed his official

bond within the time prescribed, and the bond sued upon was given voluntarily, and as an additional bond; in which case it would be binding.—Stephens v. Crawford, 1 Kelly, (Geo.) 583; Supervisors v. Coffenbury, 1 Manu. (Mich.) 355; Todd v. Cowell, 14 Ill. 72; also, the other cases cited above. Or it may have been given pursuant to sections 144, *et seq.* of the Code.

III. The complaint shows, that the bond sued on is either an *official* bond, or a bond *given in an official capacity*, or a bond payable to the plaintiff. In either case, the plaintiff had a right to sue upon it in his own name. If an official bond, or a bond given in an official capacity, he has the right to sue under section 2154 of the Code. If payable to the plaintiff, it is valid, and he had the right to sue for a breach of its condition.—Todd v. Cowell, 14 Ill. Rep. 72; Supervisors v. Coffenbury, 1 Mann. (Mich.) 355.

IV. The complaint is substantially in conformity with the form prescribed by the Code, (p. 553,) for declaring upon a bond with condition. This form does not allege a delivery. The word "made" is used, which includes a delivery. The complaint in this case uses the word "made," which is equivalent to "executed," and implies a delivery.—Jenkins v. McConico, 26 Ala. Rep. 214; Puryear v. Beard, 15 Ala. Rep. 17. Whether it does or not, if it conforms to the form prescribed by the Code, it is sufficient.

V. The breach is unquestionably sufficiently alleged in the complaint.

VI. The objection that the complaint does not show to whom the bond is payable, was not made in the court below. This is not only a fact, but is shown by the record; for, if it had been made, the court, in its judgment on the demurrer, would have granted leave to amend, which was not done. Besides, that question cannot be made now, because it is not *distinctly* stated in the demurrer.—Code, § 2253; 27 Ala. 640. If raised by the demurrer at all, it is only by way of argument and inference. Moreover, the law presumes that every public officer does his duty, until the contrary is shown.—12 Wheat. 64; 6 Cond. Rep.

44

Supreme Court of the United States, p. 445, and authorities there cited.

The probate judge is a public officer. Section 686 of the Code requires him to fix the amount of the bond, in a sum not less than $5,000. The penalty of this bond is $10,000, which shows that the probate judge fixed the amount. The sheriff is required to give the bond, payable and conditioned as required by section 118. The probate judge is required to approve it, and file and record it. Section 120 directs the probate judge not to approve a bond, unless it is in the penalty, *payable*, and conditioned as required by law. If it is to be presumed that he did his duty, then the presumption is, that the bond is payable to the State, as required by section 118. In that event, the plaintiff shows a right to sue in his own name, under section 2154.

Again; the complaint sufficiently shows that Duncan *acted* under the bond. It therefore stands in the place of an official bond, on which the plaintiff may sue in his own name.—Code, §§ 132, 2154.

The complaint is entitled to every reasonable intendment and construction.—1 Chitty's Pl. 237, top.

Again; it may be an additional *statutory* bond, given under sections 144, *et seq.* of the Code.

E. W. PECK, A. A. COLEMAN, and A. B. CLITHERALL, *contra*, made the following points:

1. The court will take judicial notice of the fact, that the first Monday in August, 1853, was the first day of the month.—Allman v. Owen, 31 Ala. 167; 1 Greenl. Ev. § 5. The complaint shows, therefore, that the bond was not made until after the expiration of the time prescribed by law.

2. At the time the bond was made, the office of sheriff of the county was vacated. Section 125 of the Code expressly declares, that if the person elected to any office fails to file his bond within the time prescribed by law, "he vacates his office." By section 161 it is declared, that an office is vacated, "1st, by death; 2d, by resignation; 3d, by ceasing to be a resident of the State; 4th,

by the decision of a competent tribunal; 5th, by act of the general assembly abridging the term of office; and, 6th, "in such other cases as are or may be declared by law." The failure to give bond, under section 125, is certainly one of the "other cases declared by law," within the meaning of the last clause of section 161; and the statute makes no distinction between the several modes in which an office may be vacated. The office being vacant when bond was given, the coroner was really sheriff, and the probate judge had no authority to accept or approve it. Code, § 696; Shirley's case, 1 Iredell, 597; Wall's case, 2 Iredell, 267; Pool's case, 5 Iredell, 105; McLean v. Button, 19 Barbour, 450.

3. A sheriff's bond is required to be made payable to the State of Alabama.—Code, § 118. The complaint does not allege that the bond here sued on was payable to the State of Alabama, or to any officer thereof, or to any other person; consequently, it shows no cause of action in the plaintiff. To entitle a party to sue on a bond in his own name, he must show that it is payable to him, or that it has been assigned to him, or that it is an official bond payable to the State of Alabama.—Code, §§ 2154, 1530; Wilson v. Cantrell, 19 Ala. 642.

4. The complaint does not state that the bond was filed in the office of the judge of probate, or that it was approved or accepted by him, or that it was delivered to him or to any other person. The alleged bond, therefore, is not shown to be valid, either at common law or by statute; and a delivery cannot be presumed, because it is not alleged that the bond was payable to any person, or that it was made for the benefit of the State.—Stephens v. Crawford, 1 Kelly, 574; Crawford v. Howard, 9 Geo. 314; State v. Shirley, 1 Iredell, 597, 605; State v. McAlpin, 4 Iredell, 148; State v. Wall, 2 Iredell, 267; State v. Pool, 5 Iredell, 105.

5. Section 132 of the Code does not aid the appellant, because the bond is not shown to be valid, either by statute or at common law; nor does the complaint aver that Duncan acted under it. Moreover, that section is, in terms, confined to bonds which are not "in the penalty, payable

and conditioned as prescribed by law," and has no application to bonds which are defective because not executed and filed within the prescribed time.

6. The bond cannot be held valid as an additional bond, (Code, §§ 136, et seq.) because the complaint does not aver that it was so executed, nor do the averments of the complaint authorize the inference that it was so executed.

7. The illegality of the bond may be reached by demurrer to the complaint.—Renfro v. Heard, 14 Ala. 23; Prewitt v. Garrett, 6 Ala. 128.

8. The sureties are not estopped from alleging the invalidity of the bond.—McWhorter v. McGehee, 1 Stew. 552; 1 Kernan, 598; 2 Smith's Leading Cases, 538; 28 Ala. Rep. 529.

R. W. WALKER, J.—The bond, as set forth in the complaint, recites that the principal obligor was elected sheriff on the first Monday in August, 1853; and it is alleged that the bond was executed on the 20th August, 1853. We will take judicial notice of the fact, that the first Monday in August, 1853, was the first day of that month.—Allman and Wife v. Owen, 31 Ala. 167.

[2.] It thus appears that, at the time the bond was executed, more than fifteen days had elapsed since the election of Duncan as sheriff. Hence arises the question, whether this is a valid "official bond;" or, if not to be considered strictly as an "official bond," whether it is nevertheless subject to all the remedies provided in reference to "official bonds." If valid only as a common-law obligation, and not governed, as to the remedies which may be maintained upon it, by the rules applicable to statutory or "official bonds," it would follow, that a suit instituted upon it must be brought in the name of the obligee.—Wilson v. Cantrell, 19 Ala. 642; Taylor v. Arthur, 9 Sm. & M. 192. And it would also result, that section 131 of the Code, which provides that "official bonds" are not discharged by a single recovery, would not apply to it.—Garnett v. Yoe, 17 Ala. 74; Stephens v. Crawford, 3 Kelly, 499. This last consideration invests

the question, as we have stated it, with unusual import-
ance and interest; and we have examined with much
care the sections of the Code which are supposed to bear
upon it.

It is insisted that "official bonds," in the sense in
which those terms are employed in sections 130 and 131 of
the Code, are bonds which have been executed, approved
and filed within the time, and which are in the penalty,
payable, and condition, as prescribed by the preceding
sections. For the purposes of this opinion, we may
admit that this is so; though we do not desire to be
understood as deciding, that a strict conformity to all
the directions of those sections is essential to constitute
an "official bond," within the meaning of sections 130
and 131. The bond in this case, not having been approved
or filed within the time prescribed, does not, according
to the concession thus made, belong to the class of instru-
ments designated in these two sections. But, by section
132, "Whenever any officer, required by law to give an
official bond, acts under a bond which is not in the pen-
alty, payable and conditioned as prescribed by law, such
bond is not void, but stands in the place of the official
bond, subject, on its condition being broken, to all the
remedies which the person aggrieved might have main-
tained upon the official bond of such officer, executed,
approved and filed according to law." In point of fact,
therefore, the distinction between "official bonds,"
strictly so called, and the bonds referred to in section 132,
so far as the remedies to which they are subject are con-
cerned, is rather nominal than real, as the latter, to all
intents and purposes, stand in place of the former.

[3-4.] It is insisted, however, that this section does not
embrace the bond here sued on, because this bond *is* in
the penalty, and payable and conditioned as prescribed;
and because, moreover, that section only applies to bonds
which, though not in the penalty, payable and conditioned
as prescribed, have yet been approved and filed in due
time.

An examination of the various provisions of the Code,
in reference to the bonds of public officers, will satisfy

any one of the studious solicitude with which the legislature has sought to afford the most ample protection to all persons interested in the performance by such officers of their official duties. The section we are considering is a part of the legislation designed to effect this general object; and it is our duty to put upon it such a construction, as will harmonize with the substance and spirit of the text to which it belongs. It is a remedial statute; and we must construe it largely and beneficially, so as to suppress the mischief and advance the remedy; or, in the language of Lord Coke, so as "to add force and life to the cure and remedy, according to the true intent of the makers of the act, *pro bono publico*."—Heydon's case, 3 Rep. 7; Sedgwick on Statutes, 359–60. It must be admitted, that the words of this section are not as clear and precise as they might be; and it is a well-settled rule, that when the words are not precise and clear, such construction will be adopted as shall appear the most reasonable, and best suited to accomplish the object of the statute; and a construction which would lead to an absurdity, ought to be rejected.—Commonwealth v. Kimball, 24 Pick. 370; Smith on Stat. Constr. §§ 516–18.

Viewing section 132 in the light of these rules, we cannot assent to the construction of it urged by the counsel for the appellee. The result to which that construction leads, demonstrates, in our opinion, its fallacy. By section 120 it is declared, that the bond of any officer, which is not in the penalty, and payable and conditioned as prescribed by law, "should not be approved;" and that the officer approving the same, "neglects his duty." Section 132 is evidently based on the supposition, that bonds which were not in the penalty, and payable and conditioned as prescribed, would, or, to say the least, might not be approved and filed; and this for the simple reason, that the officers entrusted with the authority to approve and file, are advised by an emphatic admonition from the legislature that such bonds "should not be approved," and that no bond shall be filed unless first approved.—Code, §§ 120, 126. Hence, the language is, that such a bond, if the officer executing it "*acts under it,*"

shall be subject to all the remedies which could be main-
tained "on the official bond of such officer, executed,
*approved, and filed according to law.*" These last words
seem to imply, that a bond which did not conform to the
statutory requirements, as to penalty, payee and condi-
tion, would not be executed, approved, or filed according
to law. And yet, if the sheriff *acts under* such a bond, it
stands in the place of, and is subject to all the remedies
which could be maintained upon the official bond of such
officer, executed in all respects in strict conformity to the
statute. Hence we conclude, that so far as the operation
of section 132 is concerned, it makes no difference, .
whether the bonds there spoken of have or have not been
approved and filed. The bonds referred to in that section,
could not be properly approved or filed; for the law
expressly declares, that bonds thus defective *should not be
approved*, and that the officer who does approve them *vio-
lates his duty*. If a bond is approved and filed, when it
should not have been; and if the officer who approves
and files it, violates his duty in doing so, the act of approval
and filing, *it would seem*, cannot be otherwise than nuga-
tory as such, though it would doubtless be convenient
and plenary proof of the delivery of the bond by the
obligors. This section, therefore, in our judgment, applies
to a bond which does not conform to any of the statutory
requirements, either as to its penalty, payee, conditions,
approval, or filing, *provided* the officer executing it has
acted under it. Much more clearly does it apply to a
bond which the officer executing it has acted under, and
which does conform to all the requirements of the law,
except the last two—approval and filing. To hold other-
wise, would be to maintain the paradox, that the validity
of the bond is enhanced by its increased imperfections—
that a total is less hurtful than a partial departure from
the statute, and that an instrument in fact gets better as
it grows worse.

[5.] It is urged, however, that section 125 of the Code,
which provides that, if any officer fails to file his bond
within the prescribed time, "he vacates his office," is
imperative; and that such failure absolutely and instanta-

neously creates a vacancy in the office, and divests the title of the officer, without the institution of any legal proceedings to have the fact ascertained and adjudged. Hence it is said, that Duncan was not the sheriff when this bond was executed, his right to the office having been completely and irrecoverably lost by his failure to file his bond within the fifteen days. If we concede that this is so, and that Duncan was not at the time sheriff *de jure;* still, inasmuch as he came into office under color of an election, he was not a mere naked usurper without any claim of right, but he was sheriff *de facto;* and his acts, when they concerned the public, or third persons who had an interest in the thing done, were as valid as the acts of a sheriff *de jure.*—People v. White, 24 Wend. 526; People v. Hopson, 1 Denio, 575; Hall v. Luther, 13 Wend. 494; People v. Stevens, 5 Hill, 630; Crawford v. Howard, 9 Geo. 316; Kottman v. Ayer, 3 Strobh. 94–5; Wilcox v. Smith, 5 Wend. 231; Gilliam v. Redick, 4 Ired. 368; Burks v. Elliott, 4 Ired. 355.

A bond executed by him, and conditioned for the faithful discharge of the duties of the office, will be upheld as a valid obligation; and those who have voluntarily bound themselves, as his sureties, cannot absolve themselves from liability, by alleging that he was no sheriff. It would seem, therefore, that in a suit upon the bond of a sheriff *de facto,* neither he nor his sureties can allege that he was not sheriff *de jure.*—Authorities *supra;* Jones v. Scanland, 6 Humph. 195; United States v. Maurice, 2 Brock. 97, 113; Stephens v. Crawford, 1 Kelly, 574; S. C., 3 Kelly, 499; Iredell v. Barbee, 9 Ired. 250; Green v. Wardwell, 17 Ill. 278; Crawford v. Howard, 9 Geo. 314; Douglass v. Wickwire, 19 Conn. 489; Aulanier v. Gov'r, 1 Texas, 653. If this be so, then the only purpose for which the defendant in this suit could rely upon Duncan's failure to file his bond within fifteen days, would be to show that the bond does not conform to the statute, and is not subject to the regulations and remedies applicable to statutory bonds; and we have already seen that, for that purpose, the fact of such failure is in this case of no avail to the defendant.

[6.] We do not think, however, that the mere failure of a public officer to file· his bond, within the prescribed time, effects his absolute and instantaneous removal from office.

In South Carolina, by an act of the legislature, every master in equity was required, within three weeks after his election, to tender his bond for approval; and, on its being approved, to deposit it with the treasurer, and sue out his commission; "and upon his neglect or failure to do so within the said time, his office shall be deemed absolutely vacant, and shall be filled by election or appointment as heretofore provided." He was also required to take certain oaths, and endorse them on his commission; "and unless the said oaths be so taken, endorsed, and subscribed, within ten days from the issuing of the commission, the said commission shall be utterly null and void, and the said office deemed absolutely vacant." The court of appeals of that State, in considering this act, holds, that the failure of the officer to comply with the above requirements is cause of forfeiture, but not a forfeiture *ipso facto;* that the only efficacy imparted to the official title of an officer elect, by a strict compliance with these directions, is to protect the title against forfeiture; and that if the State sees proper to excuse his delinquency, by granting him a commission, the defects of his title are cured, and it is converted into a title *de jure,* having relation back to the time of his election.—State v. Tomer, 7 Rich. 216; Kottman v. Ayer, 3 Strob. 92; Treasurer v. Stevens, 2 McCord, 107; McBee v. Hoke, 2 Speers, 138.

And in reference to a similar statute in Georgia, the supreme court of that State says: "If the sheriff fails to qualify, he forfeits his right to the office. But the proper officers of the law must pronounce the forfeiture."—Crawford v. Howard, 9 Geo. 316.

Whenever the constitution provides for the election of an officer, he derives his title to the office from the election, and not from his commission, which is the mere evidence of his right.—Wammack v. Holloway, 2 Ala. 31; Kottman v. Ayer, 3 Strobh. 94; Marbury v. Madison, 1 Cranch, 137; Garner v. Clay, 1 Stew. 182. By virtue

of his election, Duncan was sheriff, *so far as his mere right to the office was concerned*, before he executed his bond; just as the lawful successor to a throne is king before his coronation. The election having thus invested him with his title to the office, the statute requiring him to file his bond within fifteen days, and providing that on his failure to do so "he vacates his office," operates as a defeasance, and not as a condition precedent. The question we are considering is, therefore, analogous to that which arises in reference to corporations, when they do some act which, it is provided by their charter, shall amount to a forfeiture of their vested rights; and the decisions in such cases are in point here.

The supreme court of Louisiana has decided, that the clause in the bank-charters of that State, which declares that, in case of a suspension of specie-payments for more than ninety days, the charter shall be, *ipso facto*, *forfeited* and void, gives to the State the right to claim the forfeiture, in an action instituted for that purpose; and although the bank may have forfeited its corporate life, it continues to live as long as the State does not claim the forfeiture.—Atchafalaya Bank v. Dawson, 13 Louis. 497.

In New York, an act of the legislature provided, that whenever any incorporated company shall, for one year, have suspended business, "such company shall thereby be deemed and adjudged to have surrendered the rights granted by any act of incorporation, and shall be deemed to be dissolved." This act was construed to mean that in such cases an information may be filed, and pursued to judgment of dissolution—not that the corporation shall be deemed at an end without such proceeding.—People v. Hillsdale Co., 23 Wend. 257. See, also, Bank of Niagara v. Johnson, 8 Wend. 645; People v. Manhattan Co., 9 Wend. 351; Proprietors, &c. v. Newcomb, 7 Metc. 276; Mechanics' B. A. v. Stevens, 5 Duer, 676; Mickles v. Rochester Bank, 11 Paige, 118.

It is laid down as an established principle, that until the forfeiture of a charter is judicially decreed, neither the forfeiture nor the cause of it can be inquired into in another suit, nor can the existence of the incorporation

be questioned incidentally or collaterally.—2 Kent, 312, and cases there cited; 13 La. 503.

Our conclusion is, that the failure of a legally elected sheriff, to file his bond within the time prescribed, does not, by its unaided force, operate his instantaneous removal from office; and that a bond, executed by him more than fifteen days after his election, and before any step or proceeding on the part of the State to effect his amotion, must be considered as the bond of an "officer," within the meaning of section 132 of the Code. What act or proceeding would be necessary to effect his removal from office, is a question not now before us, and we do not decide it. We limit our decision to the proposition above stated. The necessities of the case do not require us to go, and we do not go beyond it.—See, further, Wammack v. Holloway, 2 Ala. 31; Hill v. State, 1 Ala. 559; McWhorter v. McGhee, 1 Stew. 552; Johnston v. Wilson, 2 N. H. 202.

This construction of the section is confirmed by the legislative interpretation of it, furnished by the act of 1854, (Session Acts, 1853-4, p. 102,) which authorized sheriffs, who had failed to give bond within the time prescribed, to do so at any time before the 1st Monday in March, 1854; and provided that, if they gave such bond, they should not be subject to a forfeiture of their offices. This is a clear declaration of legislative opinion, that by virtue of section 125 of the Code, those sheriffs who had failed to give bond within fifteen days were merely subject to a forfeiture of their offices, but had not absolutely vacated them. Upon any other hypothesis, the act of 1854 was clearly unconstitutional. If the failure to file the bond in the prescribed time effected, *eo instanti*, the actual ouster of the officer, and had all the force of a judgment of forfeiture, then it was not in the power of the legislature to restore him to office. The legislature can waive a forfeiture, but it cannot elect a sheriff. A sheriff, who has been lawfully deprived of his office, can be reinducted into it only in two ways—by an executive appointment, or a popular election.

[7.] It is insisted, however, that inasmuch as this bond

was not executed until more than fifteen days had elapsed after the election, the probate judge had no authority to accept it; and acceptance being essential to delivery, the bond is not a valid obligation for want of delivery. Although the probate judge may have had no legal authority at the time to approve, or even to accept the bond, as a statutory obligation; yet, if it was signed by the obligors, and delivered to him as the bond of the sheriff, and the latter acted under it, it is to be considered as delivered to the judge for the benefit of all persons who may be interested in the discharge by the sheriff of the duties, which it is therein stipulated he will perform; and it will be upheld as a valid obligation. In such cases, any act, which is intended by the obligors as a delivery of the instrument, will be so treated.—Stephens v. Crawford, 3 Kelly, 508; Thomas v. White, 12 Mass. 368; Green v. Wardwell, 17 Ill. 278; Crawford v. Howard, 9 Geo. 317; Speake v. U. S., 9 Cranch, 28; Alston v. Alston, at the present term.

It is true that a different principle was announced by the supreme court of North Carolina, in Shirley's case, 1 Iredell, 597; and this decision was adhered to in subsequent cases. In the State v. Pool, 5 Iredell, 112, Chief Justice Ruffin states, that the rule, as settled in Shirley's case, was adopted "with much hesitation, and against his impression." See, also, State v. McAlpin, 4 Iredell, 148. It is certainly opposed to reason, public convenience, and authority; and we cannot consent to adopt it.

We hold, therefore, that a bond, executed by a legally elected sheriff, more than fifteen days after his election, and under which he has acted as sheriff, is subject to all the regulations applicable to "official bonds;" that on its condition being broken, it may be sued on by the person aggrieved in his own name; and that successive recoveries may be had thereon, until the whole penalty is exhausted.

[8.] The complaint, however, is defective, because it does not aver that the bond was delivered, or that Duncan, as sheriff, acted under it. The form in the Code (p. 553) must be understood to apply to cases where the bond is

upon its face valid. But in this case, the suit being in the name of the party injured, and the complaint disclosing the fact that the bond was not executed and filed within fifteen days after the election, no right of action is shown. To render this bond valid as a common-law obligation, its delivery as a security for the faithful discharge of the duties of the office of sheriff was necessary; and to bring it within the influence of the regulations applicable to official bonds, so as to authorize a suit in the name of the person injured, it must not only have been delivered, but the principal obligor must have acted under it as sheriff. The averment of these essential facts being omitted, the demurrer was properly sustained.

The judgment of the circuit court is affirmed.