The People of the State of Illinois ex rel. Frank J. Loesch, Appellant, v. Frank L. Link et al., Appellees.

Gen. No. 33,835.

Heard in the third division of this court for the first district at the October term, 1929. ▮▮▮▮ FRIEND, J., not participating. Opinion filed October 29, 1930.

JOHN A. SWANSON, State's Attorney, for appellant; EDW. E. WILSON and JOHN HOLMAN, Assistant State's Attorneys, and DAVID S. STANSBURY, of counsel.

JOHN L. MCINERNEY, ALBERT FINK, HAROLD R. SCHRADZKI and BERNHARDT FRANK, for appellees; JOHN L. MCINERNEY, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

On the second day of May, 1929, a petition was presented to the superior court of Cook county by the State's Attorney of Cook county, John A. Swanson, for leave to file an information in the nature of quo warranto to oust from office Frank J. Link, James M. Whalen, John J. Touhy, Lawrence F. King, August W. Miller, John K. Lawler and Henry A. Berger, members of the Sanitary District of Chicago. The petition sets forth that the statute of Illinois (Cahill's St. ch. 42, ¶ 337; chap. 42, sec. 320 Smith's Stats., 1929, page 1195), provides that biennially after November 30, 1906, the trustees of the Sanitary District of Chicago shall make a full, complete, accurate and item-

ized report of all receipts and expenditures of moneys made by said the Sanitary District of Chicago, together with a copy of all contracts for expenditures of money to be made, and such report should be made to the Governor and to the two branches of the legislature separately; and upon the failure, refusal or neglect of such trustees to furnish said report said trustees shall forfeit the office of sanitary trustee and be removed therefrom by writ of quo warranto.

The petition further states that on November 30, 1928, the said Link, Whalen, Touhy, King, Miller, Lawler and Berger all of whom were trustees of the Sanitary District of Chicago; and as such trustees became bounden to comply with the provisions of the statute and make a report therein exacted and directed to the Governor and to both branches of the legislature; that it has been related to the petitioner by Frank J. Loesch that the said trustees had failed, refused and neglected to file the report required by the laws of the State of Illinois for the period beginning December 1, 1927, and ending November 30, 1928.

The affidavit upon which this petition was based was made by Frank J. Loesch and states that said Loesch is a taxpayer of the county of Cook and State of Illinois and that he now pays taxes in the district comprehended and territorially embraced in the Sanitary District of Chicago. It is then set forth that the said Link, Whalen, Miller, Lawler, Touhy, King and Berger were trustees, having been duly elected either by the People, or as in the case of Berger, by the members of the Sanitary District on the death of one Michael Rosenberg, who had been a trustee.

The affidavit further sets forth that from December 1, 1926, to November 30, 1928, the expenditures of the Sanitary District were in excess of one million dollars ($1,000,000) which moneys were obtained by taxation upon the assessable property in the said Sanitary District of Chicago and by sale of bonds for the said

Sanitary District; that the above named trustees had failed, refused and neglected to furnish reports required by law for the period beginning December 1, 1926, and ending November 30, 1928; that for this reason the said Sanitary trustees had forfeited their respective offices as trustees of the Sanitary District of Chicago but still pretended to be such trustees and to execute without any warrant, or right the offices of said trustees.

The information in quo warranto presented by the State's Attorney sets up substantially the facts heretofore set forth in the affidavit of Frank J. Loesch, showing the election of the various members of the Sanitary District of Chicago; their qualifying to said office; sets out the statute in respect to their duty to make report, their failure to make such report and alleging in consequence thereof that said Link, Whalen, Touhy, King, Lawler, Miller and Berger respectively had forfeited their respective offices as trustees of the Sanitary District of Chicago and that they now hold and execute said offices without any warrant, title or right to said offices.

The information further alleges that the said Link et al., as trustees of the Sanitary District had failed, refused or neglected to furnish the report required by law and for this reason had forfeited their offices as said trustees of the Sanitary District and were exercising the rights thereof without warrant of law.

A motion was made for leave to file information above mentioned, and the court thereupon entered a rule *nisi* that the respondent show cause why the prayer of the petition should not be granted.

Respondents in answer to said rule, over objection of relator, presented affidavit of Harry E. Hoff, in which said Hoff deposed that he was clerk of the Sanitary District of Chicago and that the said Sanitary District passed a certain resolution May 7, 1929; that he was familiar with the facts set forth and with the

practice prevailing in the Sanitary District of Chicago in connection with the preparation, filing, and time of filing the biennial reports; that he had examined the books and memorials and records as to the time of filing said biennial reports since 1906 and that he believed the matter contained in the resolution in respect thereto was true; that there was attached to this affidavit a report for the fiscal year of 1927 and 1928, filed by affiant as clerk of the Sanitary District with the Governor of the State of Illinois and each branch of the legislature on May 8, 1929; and that said biennial report contained all items of expenditures by the trustees during the fiscal years 1927 and 1928; that said report was attached hereto and marked Exhibit B and that the receipts from the presiding officers of each branch of the Legislature and from the Governor were also attached and marked Exhibits C, D and E.

The resolution of May 7, 1929, referred to, sets forth that the State's Attorney has asked leave to file an information in the nature of quo warranto based upon section 1 of the Sanitary District Act in respect to making reports, and that they deemed it advisable and necessary to state what actions had been taken to comply with the provisions of said Act by said trustees. The resolution reviews the passage of the Act in question and gives the history of the proceedings of The Sanitary District in respect thereto from 1905 and sets forth also that at no time has any Governor or other branch of the legislature by committee or otherwise called for further report after the filing of reports.

The resolution further states that the Sanitary District's fiscal year ends on December 31 of each year; that the books are closed on that date but that the audits are not completed until about February 1 for the following year. In the year 1929, a new clerk was elected on January 17, and a new member of the Board of Trustees was admitted to the office of president on.

December 6; that in the latter part of January or the early part of February the State's Attorney started an investigation of the affairs of the Sanitary District and as a result vouchers and books of the Sanitary District had been in possession and custody of the State's Attorney. In consequence thereof, the work of auditing books and properly preparing reports of the Sanitary District had been delayed. In addition thereto, investigations of the Chicago Bar Association and a committee of the State Senate had delayed the progress of the work of preparing said report.

The resolution states that immediately after each meeting of the board of the Sanitary District of Chicago the proceedings thereof are printed and such printed proceedings contain a true and correct copy of all contracts for the expenditures of money entered into by the Sanitary District of Chicago as well as full, complete, accurate and itemized reports of all receipts and expenditures of money by The Sanitary District and are distributed to such persons as desire copies thereof. At the close of the fiscal year such proceedings are bound for the entire year and all of the proceedings of the Board of Trustees of the Sanitary District for the years 1927 and 1928 have been printed, which proceedings include copies of all contracts which were entered during the years 1927-1928 by said Sanitary District.

In the month of January, 1929, there was published in the Journal of Commerce a daily circular newspaper of general circulation in the State of Illinois a full statement of all receipts and expenditures of every kind, class and character made by the trustees of the Sanitary District during the year 1928.

The resolution further states that the board has been advised by the Law Department of The Sanitary District of Chicago that the submission or filing of said report while the legislature was in session and

before the adjournment, was a compliance with the Act of section 1 of The Sanitary District Act in issue in quo warranto proceeding; that all reports filed pursuant to said Act above mentioned were filed during the sessions of the legislature and before the adjournment thereof excepting the report required to be filed for the period commencing with the organization of the district and ending July 1, 1905, which said report was filed October 19, 1905.

The trustees deny any intention on their part to refuse or neglect to comply with the provisions of the Act of 1905 referred to and that the trustees have considered the actions taken by their predecessors over a period of 23 years and they felt that they had substantially complied with the requirements of said Act and that the Governor and both Houses of the Legislature and People at large had acquiesced in their action in the premises and thereby had placed a contemporaneous and binding construction upon the meaning of said Act. And they direct the clerk to file said report at once with the Governor and the two branches of the legislature.

In his affidavit, Hoff deposes that he believes the facts set forth in the resolution of the Sanitary Board are true.

The affidavit of Walter Beebe was presented on behalf of respondents. The affidavit was objected to by relator. The affidavit of Beebe explains what the various exhibits therein are, stating that Exhibit A is a schedule of the bonded indebtedness of the Sanitary District showing when the respective issues become due. Exhibit B is a schedule of the outstanding issues of tax anticipation warrants. Exhibit C is a copy of the decree of the Supreme Court of the United States and the lake level controversy. Exhibit D is a schedule showing the amount of sewage treated and Exhibit E is a schedule showing the territorial extent of the Sanitary District of Chicago.

Henry A. Berger made a motion to dismiss as to himself based upon an affidavit showing that he was filling out the unexpired term of Michael Rosenberg and that on November 30, 1928, he had been a trustee for five months.

There was offered in evidence several pages of the Chicago Journal of Commerce which was objected to by relator.

From the affidavit of Harry Hoff, introduced in evidence as Exhibit B, there was taken the following letter from Edward Gore & Company, Certified Public Accountants, addressed to the Trustees of the Sanitary District of Chicago on November 28, 1928, which is in words and figures as follows:

"As a result of our work, the accounts of the District are up to date and its accounting records will compare favorably with those of a private business establishment."

After considering the petition, affidavits of respondents and exhibits in the case, the court overruled the motion for leave to file an information in the nature of quo warranto, to which action of the court exception was taken by relator, and the case comes before this court on appeal.

The People of the State of Illinois say that the judgment of the court below should be reversed:

Because the court erred in denying the prayer of the petition for leave to file an information in the nature of quo warranto.

Because the court erred in receiving over objection of relator the affidavit of Harry Hoff.

Because the court erred in receiving over objection of relator the affidavit of Walter Beebe.

Because the court erred in receiving evidence of certain pages of the Journal of Commerce issued January 31, 1921.

The judgment of the court is contrary to law.

It also appears from the record in this case that a separate report together with a copy of all contracts, was filed on May 8, 1929, with the Governor of the State of Illinois, the Lieutenant-Governor and the speaker of the House, and a separate receipt was given to the respondents, signed by David E. Shanahan, Speaker of the House of Representatives of the State of Illinois, by Fred E. Sterling, President of the Senate of the State of Illinois, and by Louis L. Emmerson, Governor of the State of Illinois, which receipts are identical except the official signing and issuing a receipt and are in words and figures as follows:

"Received from Henry A. Berger, Howard W. Elmore, Lawrence F. King, John K. Lawler, Frank J. Link, August W. Miller, John J. Touhy, James M. Whalen and Ross A. Woodhull, Trustees of the Sanitary District of Chicago, biennial report for the fiscal years 1927 and 1928, submitted and filed with me as Speaker of the House of Representatives of the State of Illinois, upon behalf of such House of Representatives of the State of Illinois pursuant to Section 1 of 'An Act to create Sanitary Districts and to remove obstructions in the Des Plaines and Illinois Rivers,' approved May 29, 1889, and in force July 1, 1889, as subsequently amended May 13, 1905, and in force July 1, 1905, and as a compliance therewith, said report purporting to contain a full, complete, accurate and itemized statement of all recipts and expenditures of moneys during the period commencing January 1, 1927, and ending December 31, 1928, of said The Sanitary District of Chicago, together with a bound copy of the proceedings of the Board of Trustees of the Sanitary District of Chicago for the year 1927 and a bound copy of the proceedings of the Board of Trustees of The Sanitary District of Chicago for the year 1928, which proceedings purport to contain copies of all contracts entered into by The Sanitary District of Chicago for the years 1927 and 1928, together with a

resolution concerning said report passed by the trustees of The Sanitary District of Chicago on May 7, 1928.''

The statutory provision, with which terms the petition charges the respondents failed and neglected to comply, is entitled, ''An Act to Create Sanitary Districts, and to Remove Obstructions in the Des Plaines and Illinois Rivers,'' approved May 29, 1889. In force July 1, 1889. Section I of said Act, Cahill's St. ch. 42, ¶ 337, was amended May 13, 1905, in force July 1, 1905, and is in part as follows:

''Provided, that the trustees of all sanitary districts heretofore created under this act and all sanitary districts hereafter to be created under this act, whenever the expenditures of any such district shall have amounted to the sum of one million dollars and such sum shall have been raised by taxation upon the assessable property in any such sanitary district or shall have been raised by the sale of bonds of said district or otherwise, shall on or before September 1, A. D. 1905, report to the Governor of this State, and to the two branches of the Legislature thereof separately all of the items of expenditures theretofore made by them as such trustees, of the moneys so belonging to said sanitary district, together with all items of receipts from all sources and shall furnish with all such reports copies of all contracts entered into by them for the expenditures of moneys so belonging to said district and upon November 30, A. D. 1906, and biennially thereafter the trustees of any such districts shall make full, complete, accurate and itemized reports of all receipts and expenditures of such moneys to be hereafter made by them respectively, together with a copy of all contracts for the expenditure of moneys hereafter to be made by such trustees to the Governor and the two branches of the State Legislature of this State separately, and the Governor and either branch of the said Legislature of this State shall have the right to

examine the books of said trustees, and all expenditures made by or in any such district, by committee or otherwise, and to call for further reports, accounts, items and copies of all contracts made by or documents held in the possession of any such trustees, and upon the failure, refusal or neglect of any such trustees to accurately and completely furnish any and all such items, accounts, documents and reports of contracts as provided in this act, any and all trustees of any such sanitary district shall forfeit their office and by writ of quo warranto be ousted and removed therefrom; all such actions to be brought in the county where any such trustees may reside, or wherein the major portion of any such sanitary district may be situated.''

The statute under consideration imposes a duty upon the trustees of the Sanitary District of Chicago to make a full, complete, accurate and itemized report as therein provided, to the Governor and to the two branches of the legislature separately. A failure to comply with the statute does not of itself cause the forfeiture or avoid the right and title to an office, but only renders it subject to forfeiture by proper proceeding, which is evidenced by the provision of the statute itself.

On May 8, 1929, the respondents, together with certain other trustees of the Sanitary District of Chicago, made and filed reports with the Governor, President of the Senate and the Speaker of the House of Representatives of the State of Illinois, five days after the petition for leave to file an information in the nature of a quo warranto was presented to the trial court. It is apparent that the State of Illinois, through its representatives, received the reports as being in compliance with the provision of the statute requiring such reports to be made as therein provided.

It must be conceded that a failure, neglect, or refusal to make such reports within the time required

by the statute, the Governor, President of the Senate, or Speaker of the House of Representatives of the State of Illinois would be justified in refusing to receive and accept such reports, because such default would subject the respondents to a forfeiture of their several offices. But these State officers elected to waive the default as to the time of filing and making such report, and received the reports and issued receipts therefor. The purpose of the statute was the making of the reports to the Governor and to the two branches of the legislature separately. This object was fulfilled when the reports were made and received. A compliance with the provision of the statute of the State, as was done in this case, protected the title of the respondents against forfeiture of their several offices.

It is contended by the relator that the time fixed by the provision within which the report must be made is mandatory, that the respondents, and each of them, having failed to file a report together with a copy of all contracts, on November 30, 1929, forfeited the title to their offices. The law does not favor forfeitures, which rule has been long established and adopted in this State, and the court will not adopt a construction of language which would produce a forfeiture, unless the language of the statute is clear and it appears that such is the intention of the legislature. In other words, the court will not search for a construction to bring about such a result.

Assume that the trustees filed the biennial report, as required, on December 1, which was received as a compliance with statute. In reason, would not that be a reasonable effort to perform a duty required by law — that is, the making of reports? A failure to file in time does not of itself annul the title to office, but renders it voidable. If the trustees in this case had made a report on November 30, 1929, then the title of such trustees to their several offices would not be sub-

ject to a forfeiture. If the report was made to the proper officers after that date and received as a compliance with the statute, then the title of the trustees to their several offices would be equally indefeasible, which is a reasonable construction of the statute in question.

In the case of the *City of Chicago v. Gage,* 95 Ill. 593, the Supreme Court had under consideration the question: Is a provision requiring a bond to be filed by the treasurer elect within 15 days after the official canvass has been declared, mandatory, and does a failure to file a bond within that time *eo instanti* upon the termination of the time absolutely vacate the office? The court in that case says:

"It is insisted on the contrary, that the sections of the charter on this subject taken together were intended merely to empower the mayor and council, in their discretion, to declare a vacancy and appoint a successor, or to waive the default as to the mere time of filing bond, and to accept and approve it when afterwards filed; therefore, a failure to file in time does not, of itself, annul or avoid the right or title to the office, but merely renders it voidable or defeasible. That if the officer files his bond strictly in time, his right and title to the office are indefeasible. If he files it afterwards, and it be accepted and approved, his right and title thereupon become equally indefeasible.

"This latter seems a reasonable construction, and is one which we are disposed to adopt. Gage derived his title to the office from the election. The law does not favor forfeitures, and 'in enforcing forfeitures courts should never search for that construction of language which must produce a forfeiture, when it will bear another reasonable construction.' *Hartford Ins. Co. v. Walsh,* 54 Ill. 168.

"Suppose the filing of the bond within the fifteen days had been prevented by some inevitable accident, but the very next day after the officer filed his bond,

which was accepted and approved,—in reason, why should not that suffice, and the officer have right to the office for the term for which he was elected? The aim of the statute would be fulfilled. The object of the statute was not a change of person to hold the office, but to secure an official bond. That having been given, the person whom the people had elected would seem the more proper person to have the office, than one appointed by the mayor and council.

"It is conceded that after the expiration of the fifteen days the mayor and council would have been fully justified in refusing to accept and approve this bond, because of this default; and in appointing Gage's successor, as in the case of *Ross v. The People,* 78 Ill. 375. Had they so elected, Gage's right to the office would have been forfeited, and a person appointed who would give a bond. But (in theory at least) the rights and interests of the public were made equally secure by electing to waive the right of forfeiture and accepting and approving the bond in suit, after the fifteen days.

" 'There is a known distinction,' say Lord Mansfield, 'between circumstances which are of the essence of a thing required to be done by an act of Parliament, and clauses merely directory. The precise time, in many cases, is not of the essence.' *Rex v. Loxdale,* 1 Burr. 447. It seems reasonable that it is only when 'the rights of the public, or of third persons, depend upon the exercise of the power or the performance of the duty to which it refers,' that the statute should be held mandatory, and otherwise but directory. *Kane v. Footh,* 70 Ill. 590; and see Sedgw. Stat. and Const. Law, 368–74. Here, the essence of the thing to be done,—that upon which the rights of the public depend,—is the giving of the bond, not the precise time when it is done.

"There are numerous authorities that a provision of law, that an officer shall give bond within a prescribed

time after his election, is directory only. *The People v. Holly,* 12 Wend. 480; *State v. Churchill,* 41 Mo. 41; *State v. Porter,* 7 Ind. 204; and see *Kearney v. Andrews,* 2 Stock. Ch. 70; *Speake v. United States,* 9 Cranch, 28. The other clauses in the charter, 'he shall be deemed to have refused said office and the same shall be filled by appointment,' or, (if held to apply here) 'the office shall become vacant,' it may be held do not change the rule, as the following authorities show, in the case of words even more explicit than these.

"In *State v. Toomer,* 7 Rich. (Law) 216, the statute required the master in chancery, within three weeks after his election, to tender his bond for approval, and upon its approval, to deposit it with the treasurer and sue out his commission, and that 'upon his neglect or failure to do so within the said time, his office shall be deemed absolutely vacant, and shall be filled by election or appointment, as heretofore provided.'

"But the court held that the failure to comply with this requirement was only cause of forfeiture, but not a forfeiture *ipso facto.* That by a strict compliance with the directions of the statute, the title of the office was protected against forfeiture, 'and that if the State sees proper to excuse his delinquency by granting him his commission, the defects of his title are cured, and it is converted into a title *de jure,* having relation back to the time of his election.'

"In *Sprowl v. Lawrence,* 33 Ala. 674, the statute required the sheriff to file his official bond in the office of the probate judge, before entering upon the duties of his office, and within fifteen days after his election. The statute also expressly declared that if he failed to file his bond within the time prescribed by law, he vacated his office. The court there say: 'By virtue of his election, Duncan was sheriff, so far as his mere

right to the office was concerned, before he executed his bond. . . . The election having thus invested him with his title to the office, the statute requiring him to file his bond within fifteen days, and providing that on his failure to do so he "vacates his office," operates as a defeasance, and not as a condition precedent,' and concluding as follows: 'Our conclusion is, that the failure of a legally elected sheriff to file his bond within the time prescribed, does not, by its unaided force, operate his instantaneous removal from office; and that a bond executed by him more than fifteen days after his election, and before any steps or proceeding on the part of the State to effect his amotion, must be considered as the bond of an "officer" within the meaning of section 132 of the code,' that is, of an officer *de jure.*"

In *Massey v. The People,* 201 Ill. 409, 412, the court cited with approval *City of Chicago v. Gage, supra,* in these words:

"The statute provides that the city clerk shall give notice to the person elected within five days after the result of the election is declared, and unless such person shall qualify within ten days after notice the office shall become vacant. (1 Starr & Cur. Stat. 1896, P. 689.) But the provision for notice has been held as directory, and the declaration that the office shall become vacant as the cause of forfeiture of an office rather than forfeiture *ipso facto.* (*City of Chicago v. Gage,* 95 Ill. 593.) In that case the question received a very full consideration, and under its authority the statute might authorize the city council to reject the defendant as alderman or to refuse to allow him to qualify later than ten days after notice, but he would not lose the title which he obtained by his election if he was permitted to qualify and act."

For the reasons indicated, it will not be necessary to pass on other questions raised on this appeal.

The order denying leave to file an information in the nature of quo warranto is affirmed.

*Order affirmed.*

WILSON, P. J., concurs.
FRIEND, J., not participating.