JACOB C. BLOOM, Appellant, *v.* ROBERT C. VAN RENSSELAER et al., Appellees.

APPEAL FROM LAKE.

Where a trust deed contains a power of sale, and an express covenant that a sale made in pursuance thereof, shall bar the equity of redemption, neither legal or equitable proceedings are necessary to enforce such a security.

After a sale and conveyance made in accordance with the provisions of the instrument, the equity of the mortgagor is extinguished.

Where a mortgagor authorizes the mortgagee to sell in default of payment, he may make a valid sale of the mortgaged premises, and convey an indefeasible estate to the purchaser.

The statute allowing redemptions upon sale of mortgaged premises, has no application to a trust deed. Only such sales are embraced by it as are made under decrees and judgments.

THIS cause was heard before MORRIS, Judge, at October term, 1853, of the Lake county Circuit Court.

B. S. MORRIS, G. GOODRICH, and V. J. HIGGINS, for appellant.

T. L. DICKEY, for appellee.

TREAT, C. J. This was a suit in chancery, brought by Bloom against Van Rensselaer, in January, 1850. The bill alleged in substance, that on the 9th of June, 1845, the complainant made three promissory notes to the defendant, for the sum of $886.67 each, and payable in three, six, and nine months respectively; that, at the same time, the complainant conveyed certain real estate to Tredwell, in trust, to secure the payment of the notes; that the deed was but a mortgage, and the complainant's title could only be divested by a sale under a decree or judgment of foreclosure; that on the 19th of May, 1847, the notes being unpaid, Tredwell exposed the premises to sale at public auction,

and the defendant became the purchaser thereof, for the sum of $1,355; that on the same day, Tredwell conveyed the premises to the defendant, and he forthwith entered into possession of the same; that the premises were sold for much less than their value, and that the sale was unfairly and fraudulently conducted; that E. W. Hoyt, who was an attorney and acting as such for the defendant, publicly stated at the time of the sale, in the presence and hearing and with the assent and concurrence of the defendant, that the complainant could redeem the premises from the sale within one year, upon paying to the purchaser the amount of his bid, and ten per cent. interest thereon; that one Sunderlin attended the sale with the intention of bidding the amount due upon the notes, but was deterred from so doing by the statements of Hoyt; that within one year from the sale, the complainant tendered the defendant the sum of $1,633, and demanded a reconveyance of the premises, but he refused to receive the money, and insisted that the sale was absolute; that the sum so tendered embraced the amount bid at the sale and interest, and the amount due upon two prior mortgages on the premises, one to Sunderlin for $100, and the other to the school fund for $106; the bill prayed that the sale might be set aside, or the complainant be allowed to redeem the premises, either by the payment of the amount bid by the defendant and interest, or the amount due upon the notes, as the court should direct.

The deed from the complainant to Tredwell authorized the latter, in case default should be made in the payment of the notes, to sell the premises absolutely and for cash, at public auction, upon giving twenty days' notice in the nearest newspaper, and convey the same to the purchaser; and it provided that the sale should be a perfect bar, both in law and equity, against the complainant, and all claiming through or under him. The deed from Tredwell to the defendant recited the terms of the deed of trust, the default of the complainant, the giving of the requisite notice, and the sale of the premises to the defendant as the highest bidder.

The answer admitted the execution of the notes and the deed of trust, and the sale and conveyance of the premises to the defendant; it denied all fraud and unfairness in the sale, the making of the statements by Hoyt, and the tender by the complainant; and it insisted that the sale was absolute, and that the deed of the trustee passed an indefeasible title. The complainant filed a replication.

The proof was substantially as follows: Sunderlin testified, that he was present at the sale; while it was progressing, Hoyt expressed the opinion, in the presence of the defendant, that the

deed to Tredwell amounted only to a mortgage, and that the premises might be redeemed from the sale within twelve months, by paying the purchase-money and interest; Hoyt had the reputation of being a good lawyer, and the witness "thought he was the attorney of Van Rensselaer at the time;" three other persons gave the same opinion as Hoyt; the witness attended the sale with the intention of purchasing the premises, but he ceased to bid in consequence of these opinions; if the sale had been an absolute one, he would probably have paid more for the premises than the defendant bid, but he could not say how much; the premises were worth at the time about $2,500; in May, 1848, the witness tendered the defendant $1,533 to redeem the premises, which he declined to receive; the witness was not authorized by the complainant to make the tender, nor did he inform the defendant for whom he made it; the complainant had previously applied to the witness to borrow money for the purpose of redeeming the premises; the witness informed the complainant of the tender, and he remarked that he was glad of it. Hinkston testified, that he was present when the money was tendered; the defendant asked Sunderlin for whom he made the tender, and he replied for a man in Southport; Sunderlin told the witness immediately afterwards, that he tendered the money to bother the defendant, and he was very glad he did not receive it; the premises were worth about $2,500. Doust testified, that he was present at the sale; a question arose whether the sale was absolute, or subject to redemption; Hoyt expressed the opinion that the deed of trust amounted only to a mortgage, and that the sale would be subject to redemption; the witness expressed a similar opinion, and referred Sunderlin to the statute relative to sales of mortgaged premises; these opinions were given in the presence of the defendant. Hugunin testified, that Sunderlin said he made the tender without authority from any one, and for the purpose of annoying the defendant.

On the hearing, the court dismissed the bill, and the complainant appealed.

It is insisted that the deed from the complainant to Tredwell amounts but to a mortgage; and, therefore, that the complainant's title can only be divested by a decree or judgment of foreclosure. Assuming the first proposition to be true, the conclusion contended for by no means follows; this must depend upon the nature of the mortgage. In the case of a common mortgage, a foreclosure by bill or *scire facias* may be necessary, in order to defeat the equity of redemption of the mortgagor. But this instrument is of a very different character. It contains

a power of sale, as well as an express covenant that a sale made in pursuance thereof shall bar the equity of redemption. Neither legal nor equitable proceedings are necessary to enforce such a security. The parties provide another and different remedy. They dispense with the ordinary forms of law, and render any resort to the courts unnecessary. They agree that the title to the mortgaged premises may be effectually transferred by a sale and conveyance. It is not their understanding that there will be any outstanding equity of redemption, after a sale and conveyance made in accordance with the provisions of the mortgage. The equity of the mortgagor is as completely extinguished by such a sale and conveyance, as it would be by his release to the mortgagee, or by a decree of strict foreclosure. It is a common practice to insert a power of sale in mortgages, and the validity of the practice is firmly established. The principle has been too long settled to be now questioned, that where a mortgage authorizes the mortgagee to sell on default of payment, he may make a valid sale of the mortgaged premises, and convey an indefeasible estate to the purchaser. Longwith *v.* Butler, 3 Gilm. 32; 4 Kent's Com. 146; 2 Story's Eq. § 1027; Coote on Mortgages, 124; 1 Hilliard on Mortgages, 90.

The deed in question certainly stands on as favorable footing in this respect, as one empowering the mortgagee to sell and convey the mortgaged premises. This power may be as well confided to a third person, as to the mortgagee. It is less liable to be abused in his hands than in that of the creditor. He acts as the trustee of both parties, and has no motive but faithfully to execute the duties of the trust. Besides, the mortgagee is, in such case, enabled to bid at the sale, and thus prevent a sacrifice of the security.

If the sale in question was made in pursuance of the power, the title of the complainant is effectually divested. The sale was absolute, and not subject to redemption. The statute allowing redemptions upon sales of mortgaged premises has no application to the case. It provides that where real estate is " sold under and by virtue of any decree of a court of equity, for the sale of mortgaged premises, it shall be lawful for the mortgagor of such lands, his heirs, executors, administrators, or grantees, to redeem the same." Mortgaged premises may likewise be redeemed from sales made under foreclosure by *scire facias.* These provisions of the statute only embrace sales made under decrees and judgments. The right of redemption does not extend to other sales. This court has decided that a court of equity may decree the strict foreclosure of a mortgage, and thus defeat the equity of redemption of the mort-

Bloom *v.* Rensselaer et al.

gagor without a sale. There being no sale in such case, the right of redemption does not attach. Johnson *v.* Donnell, ante, 97. This sale was not made by virtue of a decree or judgment, and was, therefore, not within the operation of the statute.

It follows that the defendant is entitled to hold the property, unless the sale was fraudulently or unfairly made. The allegations of fraud and unfairness are not sustained by the proof. The conduct of the trustee is not in the least impeached by the evidence. The fact that an erroneous opinion of the law was entertained, is the only circumstance in the case that can be relied on to avoid the sale. It appears that a question arose among the bidders, as to the effect of the sale; whether it was absolute, or subject to redemption. Upon this question, Hoyt and several other persons expressed opinions, that the complainant had the right to redeem from the sale. This was an erroneous view of the law, but it was no doubt honestly entertained. There is nothing in the case tending to show that these opinions were given with the view of preventing competition, or prejudicing the interests of the complainant. Nor is it satisfactorily made to appear, that they had any such effect. It is not pretended that any one but Sunderlin was influenced by them. He states that he ceased to bid because of these opinions; and that if he had understood the sale to be absolute, he probably would have bid more than the amount for which the property was stricken off to the defendant, but how much more he cannot say. This testimony is too vague and uncertain to justify a court in saying affirmatively, that the property sold for a less price in consequence of these opinions. Besides, from the peculiar connection of this witness with the case, not very full reliance ought to be placed upon his statements.

The decree must be affirmed.

CATON, J. I cannot think that this was a fair and just sale, and should be better satisfed to see it set aside. Hoyt was understood to be the attorney of the mortgagee and purchaser, and was a lawyer of reputation, and, in the presence of the mortgagee, represented that the mortgagor would have the right to redeem from the sale, within twelve months, and this statement was indorsed by the mortgagee; at least, by his silence; and under its influence the property was sold for about half its value to the mortgagee, who, I think, should be held responsible for this false impression by which he was enabled to purchase the property for half its value. Other bidders were there who would have bid more for the property, but for this erroneous statement. While this was a legal mode of disposing

of the equity of redemption, it is a very harsh one, and should be watched by the courts with a jealous eye, and should not be sustained unless it is conducted with all fairness and integrity.

*Decree affirmed.*