[Thompson v. Holt.]

# Thompson v. Holt.

*Statutory Proceeding to compel the Delivery of Books and Papers.*

1. *Duty of delivering property of office to successor; ministerial merely.* — The duty resting on every public officer, on the termination of his official relations, to surrender to his successor the official papers and *paraphernalia* of the office, is ministerial merely, no matter upon what officer it devolves, and at common law could be enforced by *mandamus*.

2. *Statutes to compel delivery of property, &c.; how proceedings under are conducted.* — The statutes to compel the delivery of books and property by public officers to their successors are summary, and designed to give a more certain and expeditious remedy than that existing at common law. The proceedings are not to be conducted as in ordinary adversary suits between private individuals, and are not governed by the same restricted rules of pleading.

3. *Same; probate judge amenable to.* — It is in his ministerial capacity that the judge of probate is intrusted with the custody of the records and property of the office, and as such he is as amenable to proceedings under the statute to compel their delivery as any other officer.

4. *Circuit judge, jurisdiction of, to exact additional bond; what not impaired by.* — The passage of the act of November 3, 1862 (§ 784 R. C.), giving chancellors and supreme court judges concurrent authority with the circuit judge to approve the probate judge's bond, does not withdraw him from the influence of § 174 of Revised Code, which empowers the circuit judge to exact an additional bond in certain contingencies of probate judges or other officers, whose bonds " are *required* to be approved by a circuit judge."

5. *Order for delivery; what title will support.* — A *primâ facie* title to the office, free from all reasonable doubt — a title to which the law attaches the possession of the office, and a right to exercise its functions — must be shown before the judge will make the order, under the statute, to compel the delivery of the books and property of the office.

6. *Same; what best evidence of primâ facie title.* — A commission of the governor, granted on a certificate of election, or founded on a proper certificate disclosing a vacancy, is the highest and best evidence of who is the officer, until the ultimate right to the office is determined on *quo warranto*.

7. *Statutory proceeding; what evidence inadmissible in.* — The circuit judge exercises power judicial, or in its nature judicial, in refusing to approve the bond of a probate judge, and his action cannot be collaterally assailed in a proceeding to compel the delivery of books and property of the office.

8. *Probate judge, office of; statutory.* — The office of probate judge is not created by the Constitution, but exists and its character is defined by statute. The various bonds required of him are not exacted as pledges for integrity and fidelity in the discharge of his judicial functions, but as a guaranty for his responsibility and diligence in the performance of his ministerial duties.

9. *Same; what amounts to abandonment of office.* — The failure to give the bond required by law as the condition precedent to entering upon the discharge of the duties of the office, is in legal contemplation a failure to accept; and the failure to give the additional bonds, when required, is a refusal to perform the condition on which the right to continue in the office depends, and is an abandonment of it.

10. *Same; what not removal from office in meaning of the Constitution.* — In either case the failure to give the bonds required is the voluntary act of the judge himself, and the vacancy thereby occasioned, when enforced against him, is in no legal sense a " removal from office " within the meaning of the Constitution, or otherwise violative of its provisions.

11. *Order compelling delivery of books and property; appeal lies from.* — The order which the circuit judge makes to compel the delivery of books and property in the statutory proceeding is of like nature with *mandamus*, and is embraced in the general words, other " remedial writs used in the act of December 15, 1868, authorizing appeals from judgments of circuit court judges on application for *mandamus* and other remedial writs."

[Thompson v. Holt.]

THIS was a statutory proceeding commenced by the appellee, P. S. Holt, against the appellant, Benjamin Thompson, before Hon. J. E. COBB, judge of the ninth judicial circuit, to compel the delivery of the books, papers, and property appertaining to the office of probate judge of Macon county, which office it was alleged Thompson had vacated, by the failure to give an additional bond required of him.

Holt's petition, sworn to by him, alleges that he is a citizen of Macon county, and on the 16th day of November, 1875, was duly appointed and commissioned, by the Governor of Alabama, judge of the probate court of Macon county, Alabama, to fill a vacancy caused by the failure of Benjamin Thompson to make and file an approved bond, as judge of probate, as required by law ; that petitioner had given an approved bond, and duly qualified in all respects according to law, and is now probate judge of Macon county ; that as such judge, and as the duly qualified successor of said Thompson, he had demanded of Thompson the books, papers, and property, &c., appertaining to the office, which demand said Thompson refused, and since then he unlawfully detains said papers and books. It ended with a prayer for an order to Thompson to appear and show cause why he should not be compelled to deliver up the books, &c., and the circuit judge accordingly made the proper order.

On the day set for the hearing, Thompson appeared, and moved to dismiss the complaint and to quash the order, upon the ground that the statutes, under which the proceedings were based, did not and were not intended to apply to cases where the books and property pertaining to the office of probate judge were involved ; that the probate judge was a constitutional officer, and could not be deprived of the books and papers in this summary proceeding. The circuit judge overruled these motions, and the defendant excepted. The defendant then demurred to the petition and order to show cause, on the same grounds on which the motion to dismiss was based, and also because it was not stated in what county or circuit defendant Thompson resided when the complaint and order to show cause were made, and because the facts stated in the complaint did not authorize the judge to make any order in the case. The circuit judge overruled the demurrer, and the defendant duly excepted.

Thompson then filed an answer stating in substance his election as probate judge in November, 1874, for the term of six years, and that he duly qualified, was commissioned, and gave a bond, as probate judge, in the proper penalty, &c., which was approved on the 20th day of November, 1874, by Hon. R. C. BRICKELL, a justice of the supreme court. On the 12th of December, 1874, he gave a bond as judge of the county court,

[Thompson v. Holt.]

which was duly approved by Hon. J. E. Cobb, judge of the ninth judicial circuit. Both of these bonds were filed as required by law. Afterwards, on the 15th of December, 1874, an order from Hon. J. E. Cobb, circuit judge, was served on Thompson, to appear on the 28th of the same month, and give an additional bond. This order was founded on the address of three members of the commissioners' court. On the 28th of November, Thompson presented to the judge an additional bond, in proper penalty, signed by himself, J. T. Menifee, W. B. Bowen, R. E. Thompson, and J. A. Grimmett, and this bond was duly approved by the said circuit judge. Afterwards, on the 11th day of January, 1875, the defendant received another requisition, based on the address of four members of the commissioners' court, " erroneously averring that defendant's official bond was worthless and insufficient, for certain reasons therein alleged," which the answer states were unfounded in fact. The judge extended the time in which to give an additional bond until the 15th of February, 1875, and on that day defendant tendered said circuit judge a bond of ten thousand dollars for his bond as probate judge, and a bond for five thousand dollars as county judge, both bonds being in proper form, &c. These bonds were signed by W. C. Thompson, L. M. Jones, and S. P. Thompson, of Bullock county, and J. C. Thompson, J. F. Thompson, W. C. Vaughan, and J. T. Menifee, of Macon county, as sureties, who duly testified that they were worth, over and above all debts, liabilities, and exemptions, a sum greatly in excess of the penalty of the bonds, and the answer alleges this to be a fact.

The answer alleges that by reason of having to hold a court about this time, the circuit judge did not have sufficient time to make proper investigation as to the bonds, but upon the investigation made refused to approve them, and a vacancy in the office was then certified. The answer further alleges that after the approval of the first bonds aforesaid by the circuit judge, the commissioners' court, or the members thereof, had no power to make the address under which the last requisition for a bond was served on petitioner, no change having taken place in the condition of the sureties or the principal. The answer further alleges that the office of probate judge being created by the Constitution, and defendant having given good and sufficient bonds, &c., he can only be deprived of the office in the mode and manner prescribed by the Constitution. The answer also denied all the allegations of Holt's petition. It was admitted that Holt was appointed, commissioned, gave bonds, and qualified as stated in the petition, and had made demand for books, &c., which was refused. Thompson's election, commission, and qualification and induction into office,

[Thompson v. Holt.]

&c., as stated in his answer, were admitted, and also that on the last requisition for bonds, which bonds the circuit judge refused to approve, a certificate of vacancy was duly certified, made out, and forwarded to the governor, who thereupon commissioned Holt. "It was also admitted that the judge made the order to show cause in this proceeding after being satisfied from the oath of complainant that the books and papers were detained by defendant." The defendant then offered to prove the entire sufficiency of the bonds tendered the circuit judge on the last requisition, which bonds the judge had then refused to approve. The circuit judge, on the objection of the plaintiff, refused to allow any evidence to be introduced touching the sufficiency of the said bonds, and the defendant duly excepted. The judge then made the statutory order requiring the delivery of the books and papers, and ordered defendant to be committed to jail until he delivered them up, the defendant not having made affidavit as required by the statute.

The defendant prayed an appeal, and giving bond in the sum fixed by the said judge for costs, and "also for damages, &c., as contemplated by the act of 1868," the appeal was allowed and a *supersedeas* of the order granted until the disposition of the appeal.

The various rulings to which exceptions were reserved, together with the order made by the circuit judge to compel the delivery of the books, &c., are now assigned as error.

While the case was pending the appellee moved to dismiss the appeal on the ground that there was no law authorizing it.

RICE, JONES & WILEY and G. W. GUNN, for appellant. — The statutes under which this proceeding is based are utterly void if they apply to a constitutional officer. The entire subject of removal of the probate judge, *after* his election, commission, qualification, and induction in office, he being eligible at that time, is *exclusively* committed by affirmative modes to the general assembly, and in some instances to the general assembly and governor combined. No other department of the government can remove him from office; or lay the predicate for removal by any action requiring a new bond. The constitutional mode is the only mode. *State ex rel.* v. *Gardner*, 43 Ala. 234; *People* v. *Du Bois*, 23 Illinois, 547; *Commonwealth* v. *Gamble*, 52 Pa. State, 343; *Ferris* v. *Higley*, 20 Wallace, 375; *Lowe* v. *Commonwealth*, 3 Met. (Ky.) 240; *Hoke* v. *Henderson*, 4 N. C. 14; *Thomas* v. *Owen*, 4 Md. 190; *State* v. *O'Driscoll*, 3 Brevard, 526; *People* v. *Whiteside*, 23 Wendell, 9; *Johnson* v. *Wilsondale*, 2 N. H. 202; Cooley Con. Lim. 79–90. No matter what inconvenience may result from this construction, it is a sufficient answer to them

[Thompson *v.* Holt.]

all that *ita lex scripta est.* The jurisdiction conferred by these statutes is summary. Every fact necessary to uphold it must affirmatively appear. The petition does not show in what county Thompson resided. Under the statute the judge has no jurisdiction except in the county of the *defendant's residence.* The petition, failing to aver this, was defective, if not void. Surely Thompson, when it was attempted to eject him from office in this summary proceeding, had the right to show that he had done all the law required, and tendered a sufficient bond. No right can be lost by the failure of a public officer to do his duty, when the defendant has done all he could to have the bond approved. *Ex parte Mitchell,* 39 Ala. 442.

The present case shows a clear attempt to nullify the action of two judicial officers in approving defendant's bonds, by immediately declaring them insufficient on the same state of facts on which these very judicial officers had just acted. Unless some change in the *status* of the sureties or principal was shown, the commissioners' court had no jurisdiction to declare the bonds insufficient. The "common law and every system of law recognizes the fact that it is a *positive wrong* to exclude a rightful claimant from an office." 24 Michigan, 458.

The office of probate judge is a constitutional office, owing its origin and being to the Constitution. No other fair construction is admissible from the language of the fundamental law. *State ex rel.* v. *Gardner,* 43 Ala. 234. If it be said the giving of bond is ministerial, and that the office is vacated for failure to give it, it is sufficient to say that the *judge* cannot be removed in this proceeding for failure to perform a ministerial duty. Otherwise all the judges could be legislated out of office by simply annexing ministerial duties on such terms that they could not perform them. This is indirectly doing what the Constitution itself forbids. A commission must be founded on a certificate of vacancy or election, which in legal contemplation is part of the commission. Any facts showing want of jurisdiction to make the certificate are admissible, whether the commission be *primâ facie* evidence or not.

STONE & CLOPTON, GRAHAM & ARRINGTON, and WATTS & WATTS, *contra.* — The circuit judge acted judicially in refusing to approve Thompson's bond. *Ex parte Harris,* at last term. His action could not be collaterally impeached by showing in this proceeding that the bond tendered was sufficient. The commission of the governor is conclusive evidence, until invalidated on *quo warranto,* as to who is the lawful officer. *Hill* v. *State,* 2 Ala. 559; *Reynolds* v. *McWilliams,* 49 Ala. 552; *Ex parte Harris,* in MS. The circuit judge was bound to take notice that the petitioner was the rightful officer. 28 Ala. 164; 37 Ala. 32; 1 Ala. 559.

[Thompson v. Holt.]

The Constitution does not itself create the office of probate judge; but it is left entirely to the legislative discretion to say whether the courts of probate, which the Constitution authorizes, shall or shall not exist. The probate judge is on the same footing with the officers of the " other inferior courts " which may be from time to time established. These " inferior courts," and the judges thereof, may be destroyed by the power which creates them. *Perkins* v. *Corbin*, 45 Ala. Having the right to create the office, what prevents the legislature from prescribing the terms on which the office shall be held ? *Dorman* v. *State*, 34 Ala. 229 ; *Benford* v. *Hill*, 15 Ala. 521.

The constitutional provision about the removal of judges is not the only mode by which the office is vacated. The maxim "*Expressio unius est exclusio alterius*" ought not to countervail the admitted right and power of the legislature to do everything for the public weal not directly, or by strong implication, forbidden by the Constitution. *Sadler* v. *Langham*, 34 Ala. 311.

Ever since the State has been admitted into the Union, it has had statutes providing for the vacation of judicial offices and the causes of removal. Until *Gardner's case* it was never doubted, whether the office was created by the Constitution or owed its origin to statute, that the legislature had plenary jurisdiction to prescribe the terms and conditions on which the office should be held, and in what manner forfeitures should be enforced. *Gardner's case* is in irreconcilable conflict with the later case of *Perkins* v. *Corbins*.

The peace and good order of society require that there should be some power to fill vacancies. Can an officer abandon his duties for months, when the impeaching body is not in session, and afterwards come back and be entitled to hold the office, notwithstanding the appointment of another to fill it, until the court of impeachment acts ? Suppose the judge is sentenced to the penitentiary for crime ; is the governor powerless to fill the office — although the judge is in the penitentiary — until the legislature meets and impeaches the judge ? All these consequences must flow from the position contended for by appellant. The provisions of the Constitution about the right of the judge to " hold office for six years," &c., must all be construed in harmony with the construction which, *for half a century*, has been adopted by all the departments of the government under the different state constitutions.

NOTE BY REPORTER. — The motion to dismiss the appeal was overruled, for the reasons given in the following opinion : —

BRICKELL, C. J. — This was a proceeding instituted by the appellee, claiming to be judge of probate of the county of

Macon, against the appellant as the former incumbent of the office, under the 6th article, 5th title, chapter 1, part 1, of the Revised Code, to compel the delivery of the books, papers, and property appertaining to the office. It was had before the judge of the circuit court of the ninth judicial circuit, who made an order requiring the appellee to make the delivery. From that order this appeal is prosecuted, and the appellee moves its dismissal, because the appeal does not lie from such orders, but only from the final judgments of the circuit court.

The jurisdiction conferred by the statute under which the proceedings were had and the order rendered is special, and to be exercised not by a court in term time, but by the judge of the circuit court, or of the probate court of the county, in which the person complained of resides. As the judge of the one or the other court, he is clothed with authority to entertain the complaint, when properly made, and to hear and determine it in the mode prescribed by the statute. The remedy to be pursued for a revision of the proceedings is not prescribed. *Certiorari* would, in the absence of a statute authorizing an appeal, be the only remedy to revise the action had under the statute. 1 Brick. Dig. 333, § 2.

At common law, *mandamus* was the remedy to compel the transfer or delivery of the books, records, papers, seals, and other paraphernalia of a public office to the person entitled to their custody; and by virtue of the writ the surrender of public buildings pertaining to the office could be compelled. High on Ex. Leg. Rem. part 1, chap. 2. The purpose of the Code was to provide even a more summary and adequate remedy than that *mandamus* would afford. The remedy thus provided is cumulative, not exclusive, and is of like nature with *mandamus*.

The act of December 15, 1868 (Pamph. Acts 1868, p. 410), authorizes an appeal to this court from the judgment of judges of the circuit and city courts, "on applications for writs of *certiorari*, *supersedeas*, *quo warranto*, *mandamus*, and other remedial writs." Circuit judges, as judges, have authority, which can be exercised in vacation, distinct from and independent of the jurisdiction of the circuit court, to grant writs of *certiorari*, *supersedeas*, *quo warranto*, *mandamus*, and all other remedial and original writs, which are grantable by judges at the common law. R. C. § 747. A like authority is generally conferred on the judges of city courts, by the statutes creating such courts, and is necessary to render the jurisdiction of the courts effectual. The purpose of this statute was to make the right of appeal coextensive with the authority the judges, as such, could exercise, as it is coextensive with every final judgment the circuit or city court may render. The pro-

ceeding before the judge to compel the delivery of official books and papers is remedial; the order he may issue is a mandatory precept, compulsory on the defendant to whom it is addressed. It is of like nature with *mandamus*, accomplishes the same result, and is embraced within the general phrase of the statute of 1868, " other remedial writs." The appeal is properly taken under that statute, and the motion to dismiss must be overruled.

At a subsequent day of the term, the case having been duly argued and submitted, the Chief Justice delivered the opinion of the court on the merits of the case.

BRICKELL, C. J. — It is the duty of every public officer, on the expiration of his official relation, to surrender to his successor the property of the office which the law commits to his custody. In such property he has no individual right or interest; the title to it resides in the public, and of it he is merely custodian during his continuance in office. The duty is ministerial merely, no matter on what officer it devolves; and at common law, its performance was enforced by *mandamus*. High on Ex. Leg. Rem. §§ 73–4. The general assembly deeming the common law remedy too dilatory, and impressed with a conviction of the importance of avoiding the public injury which would ensue from protracted litigation between the outgoing and incoming officer over the property of the office, provided a summary remedy for compelling the delivery of books, papers, property, and money, by public officers to their successors. It is first declared that in all cases, in which it is not otherwise expressly provided, when any office is vacated, except by the death of the incumbent, all books, papers, property, and money, belonging or appertaining to such office, must, on demand, be delivered over to the qualified successor; a violation of the duty is a misdemeanor. On a refusal, after demand, to make the delivery, complaint may be made to the judge of probate of the county, or the judge of the circuit court, by the successor in office, and if the judge is satisfied by the oath of the complainant, and such other evidence as may be offered, that property pertaining to the office is withheld, he must make an order requiring the person withholding to show cause why he should not be compelled to deliver it. The person charged may discharge himself by making affidavit that he has made the delivery. If he does not make the affidavit, the judge must proceed to inquire into the circumstances, and if it appears that such property is withheld, must make an order committing the accused to jail until he makes the delivery, or is otherwise discharged by due course

[Thompson *v.* Holt.]

of law. A search-warrant must also issue, commanding a search to be made in designated places for the property withheld, and if it is found, it must be seized and brought before the judge. R. C. §§ 193–197. The proceeding is summary, and designed to afford an expeditious remedy for the correction of the wrong against which it is directed. It is not conducted, and should not be, as ordinary adversary suits between private individuals. The complaint serves its purpose when it calls into exercise the authority conferred on the judge. It is not necessarily the basis of the action taken. That may be founded on other evidence, oral or written, which may be offered to and received by the judge. If the oath of the complainant and such other evidence as the judge may receive requires an order to the party charged to show cause, the order is made. On his appearance, the statute does not contemplate that he shall plead, or that the judge shall be arrested or impeded in the discharge of his duty by matters of pleading. If the party charged does not discharge himself by an affidavit that he has delivered the property it is alleged he is guilty of withholding, the duty of the judge is plain and must be pursued. An inquiry into the circumstances must be made, and on the inquiry, all relevant evidence can be introduced by complainant and defendant, and the judgment which the evidence requires pronounced. No pleading is necessary to authorize the introduction of all proper evidence; and if pleading is resorted to, it cannot narrow or enlarge the inquiry the judge is bound to make. The judge very properly overruled the motions to quash and the demurrer to the complaint. They were mere nullities, and should not have embarrassed him in proceeding to the examination the statute prescribes.

2. It is insisted a probate judge is not an officer against whom this statutory remedy can be taken. Under our statutes a probate judge is not only a judicial but a ministerial officer. The court over which he presides is a court of record. Of the records, he is the exclusive legal custodian. All the duties ordinarily devolved on the clerk of a court of record he is required to perform. All the transactions of the court he must, in his ministerial capacity, register. Besides, he has charge of all the records of the county, as a municipal division of the State, and registers every conveyance of property, real or personal, within the county, of which registration is authorized. Having a judicial and ministerial capacity, that which it is his duty as a ministerial officer to do could, at common law, be compelled by *mandamus.* It is in his ministerial capacity that he has the custody of the records, papers, and other property of the office. From that capacity results the duty of delivering them to his qualified successor. If he fails or neglects the

[Thompson v. Holt.]

duty, he may, as any other mere ministerial officer, be compelled to its performance. The rule in reference to awarding a *mandamus*, at common law, is, that " it is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety of issuing a *mandamus* is to be determined." If mere ministerial duties are devolved on an officer, judicial or executive, he may be compelled to their performance. *Tenn. & Coosa R. R. Co.* v. *Moore*, 36 Ala. 371; *Nichols* v. *Comptroller*, 4 Stew. & Port. 151. The statutory proceeding to compel the transfer of books, papers, and other property of a public office, is merely cumulative, and will lie whenever a *mandamus* could be obtained at common law. If there was a clerk of the court of probate, charged with the custody of its records and other property, and bound to the performance of the ministerial duties the judge is required to perform, it would not, we suppose, be doubted that he was amenable to the statutory remedy. The judge, in his ministerial relation, being bound to the duty the statute proposes to enforce, is subject to the remedy it prescribes.

3. A *mandamus* to compel the delivery of property pertaining to a public office could not be invoked, when in reality the object was to test the title to the office. If the title was the real question in issue, the courts would not interfere by *mandamus*, but remitted the parties to *quo warranto*, or other appropriate legal remedy. High on Ex. Leg. Rem. § 77. The relator must have exhibited a clear *primâ facie* title, entitling him to the custody of the property of the office, or the courts would not compel its transfer to him. The same rule must prevail in reference to the statutory proceeding. It cannot be perverted into a method of determining the strength of rival claims to a public office. The complainant resorting to it must show a *primâ facie* title to the office, free from all reasonable doubt, — a title, to which the law attaches the possession of the property of the office, and the right to exercise the functions of the office, until, in a direct judicial proceeding, that title has been vacated. *In re Whiting*, 2 Barb. 513; *People* v. *Allen*, 42 Barb. 203; *People* v. *Stevens*, 5 Hill, 616; *In re Backer*, 11 How. Pr. 430. A *primâ facie* title to a public office confers a right to exercise its functions, and a right to the possession of the insignia and property thereof. On this *prima facie* title the court will compel a delivery of the insignia and property, that the functions and duties of the office may be exercised. *Atherton* v. *Sherwood*, 15 Minn. 221; *Crowell* v. *Lambert*, 10 Minn. 369; *People* v. *Head*, 25 Ill. 325; *Bloom* v. *Van Rensselaer*, 15 Ill. 503; High on Ex. Leg. Rem. § 74. We turn then to the inquiry, has the relator exhibited a clear *primâ facie* title to the office of judge of probate of Macon county?

VOL. LII.

[Thompson v. Holt.]

The facts in reference to it are undisputed. The respondent Thompson was constitutionally elected judge of probate, at the last general election, for the term of six years. Before entering on the duties of the office, he gave bond payable and conditioned, approved and filed as required by law. Having taken the oath of office, and received from the governor a commission, he entered into the office. At the time of his election and qualification, the law annexed as a condition precedent to his induction into office the making and approval of a bond conditioned for the performance of his official duties. R. C. § 784. As a condition to continuance in office, the law also required him to give an additional bond, whenever a majority of the grand jury of the county should, in term time, require it, on address to the presiding judge of the circuit court; or, in vacation, three members of the commissioners' court of the county should, on address to the judge of the circuit court, require it. R. C. § 174. The failure to execute such additional bond is a forfeiture or vacation of the office, and on the circuit judge is imposed the duty of certifying the vacancy to the governor, who has the appointing power and is bound to fill it. R. C. § 177. These are conditions imposed by law, when the respondent was elected and accepted the office : the one a condition precedent, which must have been performed before he could legally be inducted into the office ; the other a condition on which continuance in office depended. " If conditions in law, which are annexed to offices, be not observed and fulfilled, the office is lost forever, for these conditions are as strong and binding as express conditions." 7 Bac. Ab. 321.

Four members of the commissioners' court, in vacation, by address to the judge of the circuit court of the ninth judicial circuit, of which Macon county is a part, complained that the official bond of the respondent, as judge of probate, was insufficient. Thereupon he was required to give an additional bond. The requisition was in writing, and of it the respondent had personal notice. He appeared and tendered an additional bond, but the circuit judge not deeming the securities thereon sufficient declined to approve it. After some delays to enable the respondent to improve the bond, so that the judge could approve it, he failed to give a satisfactory bond, and by the express terms of the statute the failure operated a vacation of the office, and the unqualified duty of the judge was to certify the vacancy to the governor. The certificate was made, and the governor appointed and commissioned the complainant to fill the vacancy, who was qualified according to law. The judge of the circuit court in requiring an additional bond, and in approving or disapproving such bond when tendered, and in certifying a vacancy in the office on a failure to

give an additional bond, exercised power in its nature judicial. *Ex parte Harris, Ex parte Thompson*, January term, 1875. His action until reversed or annulled is final and conclusive. When it is drawn in question collaterally, the facts on which it is based cannot be again litigated or controverted. It follows, therefore, that the judge of the circuit court properly refused to hear any evidence touching the sufficiency of the bond, which the respondent had tendered to him before the certificate of the vacancy, and which he had declined to approve. That bond had been finally and conclusively adjudicated insufficient, when its sufficiency was directly before the judge, and he had exclusive jurisdiction to determine the matter. On this proceeding that adjudication could not be reopened.

When a vacancy occurs in the office of judge of probate subsequent to an election, on the governor rests the duty of filling it. The evidence of the appointment is a commission signed by him, under the great seal of the State, countersigned by the secretary of state. Public offices are public trusts created for the due and orderly administration of the law, the preservation of public peace, the convenience and advantage of the citizen, and the protection of individual right and interest. Public policy demands that they shall at all times be filled by officers bearing the proper evidence of their right and authority, and without doubt amenable for misfeasance, malfeasance, and nonfeasance. No uncertainty or doubt should rest in the public mind as to who is a legal public officer. It would be an evil of less magnitude if the sphere of official duty and the extent of official authority was indistinctly marked, than that the community at large should be fretted with doubt and uncertainty as to the individual from whom they could invoke the exercise of official authority, and demand the performance of official duty. Hence under our Constitution and statutes, nearly every public officer must bear a commission from the governor. Public offices are elective, and the returns of elections are made to the secretary of state, on whose certificate the commission originally issues. When subsequent to an election a vacancy occurs otherwise than by resignation, some public officer, ministerial or judicial, acting under the sanction of official oath, is charged with the duty of ascertaining and certifying the fact of vacancy to the governor. On this certificate an appointment is made, when it discloses the office is vacant. The commission of the governor, whether granted on a certificate of election, or a certificate of vacancy, is the highest and best evidence of who is the officer, until on *quo warranto*, or a proceeding in the nature of *quo warranto*, it is annulled by a judicial determination. *Hill v. State*, 1 Ala. 559; Brightly's Lead. Election Cases, 314, and

[Thompson v. Holt.]

note on p. 319. It is this commission which imparts to the courts judicial notice, and which informs the community who are clothed with official authority, and bound to official duty. In a proceeding, whether by *mandamus* or under the statute, to compel the transfer of property ·attached to a public office, this commission is a clear *primâ facie* title to the office, on which the courts will proceed without indulging any inquiries behind it, when it is founded on a certificate of election, or a certificate disclosing vacancy, made by proper authority. Inquiries behind it would generate a controversy as to the title to the office, which, as we have already said, cannot be entertained either on an application for a *mandamus* or in the statutory proceeding. The court must rest on the *primâ facie* title, and award the keeping of the property of the office to this title, for the time being, without adjudicating whether the relator has or not the actual title. *People* v. *Kilduff, supra ; People* v. *Head, supra ; Crowell* v. *Lambert, supra ; Atherton* v. *Sherwood, supra ; State* v. *Churchill,* 15 Minn. 455; *People* v. *Miller,* 16 Mich. 56; *State* v. *Governor,* 1 Dutch. N. J. 331. The relator having been duly commissioned by the governor, and having qualified as judge of probate, was entitled to the custody of the books, papers, moneys, and property of the office. The refusal of the respondent to deliver them on demand subjected him to an order of commitment, as made by the circuit judge.

4. It is insisted by the appellant, that a probate judge is not now within the terms of the statute authorizing the requisition of an additional official bond, on the address of a grand jury or of the commissioners' court ; that the statute only applies to officers whose official bonds *are required to be approved by a circuit judge;* and as the bond of a probate judge may now be approved by a chancellor, judge of the supreme court or of the circuit court, he is not within its terms. When the statute was originally enacted, a circuit judge only had authority to approve the bond of a judge of probate. In 1862, authority to approve was conferred on a chancellor, or a judge of the supreme court, concurrent with that of the judge of the circuit court. R. C. § 784. Conferring such authority on a chancellor, or judge of supreme court, certainly was never intended to absolve the probate judge from the duty of keeping a sufficient official bond, or to relieve the grand jury and commissioners' court of the county from the duty of inquiring into its sufficiency, and requiring a bond that will fully indemnify and protect the community. There does not seem to us the least repugnance between the statutes. The purpose is, that a probate judge, clerk of the circuit court, or other public officer, whose official bond a judge of the circuit court has authority to approve, may by the judge, in certain contingen-

cies, be required to give an additional bond. The statute cannot be read as if it was confined to officers whose bonds a circuit judge alone had authority to approve. It must be understood as referring to all official bonds he has authority to approve, though a like authority is conferred on other officers.

5. It is next insisted, the statutes vacating the office of the judge, on his failure to execute an additional official bond on requisition, are violative of the Constitution. The proposition is thus expressed in the written argument of the counsel for appellant : " The office of probate judge is elective. Its term is fixed by the Constitution of the State, in section 12 of Article VI. The entire subject of removal of such judge, after his election, commission, qualification, and induction, is exclusively committed to the general assembly, and to the general assembly and governor, in specific modes affirmatively prescribed in the Constitution in sections 23 and 24 of Article IV. and in section 12 of Article VI. Except in one or the other of these modes, the respondent cannot be removed, either directly or indirectly. No circuit judge can remove him upon any address, or lay the predicate of his removal by any requisition founded on any address." In support of the proposition we are referred to numerous authorities, most of which are collected in Cooley's Con. Lim. 276–77 (note 2), asserting that when the term of an office is fixed by the Constitution, the legislature cannot remove the officer — except as the instrument may allow — either directly or indirectly by abolishing the office. An error in the proposition lies in assuming the office of probate judge is created by the Constitution. The Constitution does not create the office. It exists and its character is defined by statute. The Constitution was adopted, and it must be construed in connection with existing laws. These were not abrogated, except so far as repugnant to the provisions of the Constitution. When the Constitution was adopted the court of probate existed, — clothed by statute with the jurisdiction which the former constitutions and the present Constitution declare the general assembly should have power to delegate to a court of probate in each county, and a much larger jurisdiction wholly of legislative origin. The only officer of the court was by statute designated a judge, but he was intrusted with ministerial as well as judicial powers. A bond was, by legislation, demanded from him, as a guaranty for diligence and fidelity in the performance of his ministerial duties, as it is exacted from other mere ministerial officers. It is not a guaranty for his integrity and fidelity as a judge. For this no other security is demanded from him than that demanded from all other judicial officers — his official oath, and the sense of responsibility which the power and dignity of the

[Thompson v. Holt.]

office inspire. The official bond stands as an indemnity against his errors or his wilful misconduct, as a ministerial officer only. *Hamilton* v. *Williams*, 26 Ala. 527 ; *Phelps* v. *Sill*, 1 Day, 315. For that which he may do or omit as a judge, he is exempt from a civil suit or indictment. The policy of the State, founded on a due regard for the interests of the community, expressed in legislation which began in the days of our territorial existence, and which has been enlarged as public necessity demanded, has required of a probate judge an official bond, with sufficient sureties, conditioned in legal effect for the faithful performance of his ministerial duties, as a condition precedent to his induction into the office ; and the giving an additional bond, when legally required, as a condition on which his continuance in office depended. The failure to give such bond is at first a failure, in legal contemplation, to accept the office ; and a failure to give the additional bond, when required, is a voluntary refusal to perform the condition on which his continuance in office depends, and is an abandonment by his own act, or a vacation of the office. The court of probate thus organized, and the judge of probate having a dual capacity, ministerial and judicial, is the court of probate and the judge of probate referred to in the Constitution. It may be that for judicial misconduct the judge cannot be removed from office except in the modes prescribed by the Constitution for the removal of judicial officers. Removal is involuntary — not the act of the officer, but of a superior power. The failure to give an additional bond is the act of the judge himself — is voluntary ; and the public good demands the vacation of the office, unless the bond is given for the security of the public. We cannot see that the Constitution is offended by the statutes under which an additional bond may be required of a probate judge. The argument would be stronger to support the proposition, that an additional bond could not be required of a sheriff, whose constitutional term is three years, and his failure to execute it made a vacation of the office. Yet, such a proposition would scarcely be advanced, and would be at variance with all our legislation from its earliest history.

There is no error in the record, and the judgment must be affirmed.