[State ex rel. Harris v. Tucker.]

# State *ex rel.* Harris *v.* Tucker.

*Information in the Nature of Quo Warranto.*

1. "*Election;*" *meaning of word as used in Revised Code, and subsequent laws.*—The word "election," used in section 162 and other sections of the Revised Code, fixing the number of days after "the election," within which official bonds must be filed, and found in the act to regulate elections in the State of Alabama, approved April 23d, 1874, and in the act of the same title, approved March 3d, 1875, means the act of casting and receiving the ballots, the day and time of voting ; and hence the time within which official bonds are to be given, commences to run from the day of the election, and not from the date of the certificate of election.

2. *Official bonds ; statutes in relation to, construed*—It was the intention of the legislature in enacting the statutes relative to official bonds (Art. 3 and 4, Chap. 1, Title 5, Part 1,) contained in the Revised Code, to provide a simple and speedy method of securing good and sufficient official bonds, and having them renewed, and in case of failure in either of these respects of declaring and filling the vacancy, without awaiting judicial proceedings to determine the question of failure to execute or renew such bonds.

3. *Cases criticised and overruled.*—What is said in *Sprowl v. Lawrence*, 33 Ala. 691, and the decision in *State ex rel. v. Ely*, 43 Ala. 568, to the effect that a judicial investigation is a prerequisite to the certification of a vacancy and an appointment to fill it, declared to be an erroneous exposition of the statute.

APPEAL from Circuit Court of Hale.

Tried before Hon. GEORGE H. CRAIG.

This was an information in the nature of *quo warranto* to try the right of the appellee to the office of sheriff of Hale county. The appellee, in his answer, set up the facts stated in the opinion, and the relator demurred. The demurrer being overruled, the parties admitted the facts to be true as set up in the answer, and the relator moved for judgment in his favor, which was overruled, after which he declined to proceed further, and judgment was rendered in favor of the appellee. The main question involved in the case was, whether time within which the sheriff is required to file his official bond commences to run from the day of the election or the date of the certificate of election.

SMITH & ROULHAC, for appellant.—To constitute an election, under our laws, certain steps are required to be performed, in regular order, by the agents of the sovereign who confers the office. Until these steps are taken, the methods declared by law for " choosing persons to fill an office," have not been complied with, and there is in legal contemplation no "election." It ought not to be presumed that the people who confer the office, intended that while the votes are being

[State ex rel. Harris v. Tucker.]

counted, which give the right to the office, and before the vote is announced, the party elected shall forfeit his office because he did not ascertain his election in advance of the tribunals appointed for that purpose.

The "choice" of the officer has to be completed by several sets of officers before he is elected. If the election is finished when the polls are closed, the result must be known then; for in legal contemplation how can there be a "choice" until it is ascertained who has been chosen? There can be no choice until it is ascertained and declared who are chosen, and this ascertainment is the "election" within the meaning of the statutes.

When it is said that title to an elective office is derived from the election, it is meant that it is from an election as a complete thing, a unity, receiving within its definition its beginning, its intermediate parts and its conclusion or result, just as that to an appointive one is derived from an appointment, completed and finished.—*U. S. v. LeBaron*, 19 How. 79.

As an appointment in Alabama is but one act in itself, so an analogy as to the time limited in section 162 Revised Code, from the juxtaposition of an election and appointment, should be taken only from an appointment in some measure resembling an election, which is the case where an appointment consists of several acts or parts.—*Marbury v. Madison, supra.*

Appellant has done all he could to qualify within the time prescribed, and he can not forfeit his title to the office through the faults of the election officers.—5 Michigan, 150; *People v. McManus*, 34 Barbour, 620; *State v. Miller*, 16 Michigan.

It is said in *Thompson v. Holt*, that the judge forfeited his office because he failed to give bond. But was he not entitled to be heard before he is thrust out of an honorable position to which he was elected? Does it not comport better with the spirit of our institutions that his failure, or the reasons excusing it, should be first judicially ascertained?

GARRETT AND WALKER, for appellee.—The only escape for appellant is to establish that the legislature did not mean what it said when it declared that bonds should be given within fifteen days after the *election*. He would have the court to interpolate the words, "*within fifteen days after the result of the election is certified by the Secretary of State.*"

According to the ordinary and popular signification, the "election" transpired and was consummated, when the polls closed on the day of the election.—4 East. 135; see Webster's Unabridged Dictionary. Whenever the legislature

[State ex rel. Harris v. Tucker.]

refers to any other thing to be done about counting votes, &c., it uses different language. Certificates of election constitute no part of the election—they are merely *prima facie* evidence of it.—Cooley's Con. Lim. 618. Under the law, the sheriff's term was fixed at three years, and the next election occurs three years after the election held on Nov. 4th, 1874; the sheriff's term commenced then, on Nov. 4th, 1874. How could it commence on that day, if he was not *elected* on that day? The Michigan cases, cited by appellant, do not apply, because the statute under which they arose is different from ours.—See 9 Kansas, 37; 48 Ga. 61. The argument of inconvenience can not outweigh the positive command of the statute. The court will know also, that the result in nearly every instance is known long before the certificate of election is made.

STONE, J.—The object of these proceedings is to inquire by what authority the defendant is in the exercise of the office and functions of sheriff of Hale county. That he was appointed by the governor, and was commissioned under the seal of the State, are facts not disputed. The reason urged for his ouster is, that he was appointed to the office when there was no vacancy. The facts are as follows:

On the 3d November, 1874, at the general election held for Hale county, George E. Harris was voted for, and received a majority of the votes cast for the office of sheriff. No question is raised on the regularity of this election. Some delay, not accounted for, was suffered to occur in making the required return to the Secretary of State, and the latter official did not receive it until the 20th November, more than fifteen days after the day of election. He immediately issued to Mr. Harris a certificate of election; such certificate of the Secretary of State reached the said Harris on the 23d day of November; and on the 2d day of December following he tendered his bond to the judge of the circuit court for approval. This bond was in form, penalty and sureties sufficient, but the judge of the circuit court declined to approve it for reasons following.

After the expiration of 15 days, dating from the day of election—3d day of November—the judge of probate certified to the governor Mr. Harris' failure to file in the probate office his official bond; and thereupon, on the 25th day of November, the governor appointed John S. Tucker sheriff of said county; and on the 3d day of December the judge of the circuit court approved his official bond. On the same day he declined to approve the official bond tendered by Mr. Harris, giving his reasons for such refusal in the following

language: "This bond is executed and conditioned as pre-scribed by law, and the sureties thereon are considered by me to be good and sufficient, but as more than fifteen days have elapsed since the election on the 3d day of November, 1874, I decline to act upon the same." The act of April 22d, 1873, section 55, Sess. Acts, p. 29, giving continued life to the act of August 1, 1868, makes it the duty of the judges of the supreme court, chancellors, or judges of the circuit court, to approve the bonds of sheriffs.

The point made for appellant is, that the *election* contem-plated in section 162 of the Revised Code, is not considered as made so long as any official action bearing upon it remains to be performed. In the case of sheriffs, it is contended that the time of election, from which the fifteen days begin to run, dates from the certificate of election, given by the Secretary of State.—Section 54, act of 1873, Pamph. Acts, 29. Bonds of sheriffs are required to be filed in the office of the judge of probate. Section 7 of the act "to regulate elections in the State of Alabama," approved April 22, 1873, enacts "that one sheriff      .      .      .      · shall be elected on the first Tuesday after the first Monday in November, 1874, and every three years thereafter."

Section 46 declares "that it shall be the duty of the inspec-tors of all elections in the election precincts, immediately on the closing of the polls, to count out the votes that have been polled, and after so doing, to promptly certify the poll list, seal up the boxes containing the ballots and poll lists, and deliver them to the returning officer, who shall deliver such sealed boxes to the judge of probate within *forty-eight hours* after they have been delivered to him."

Section 47 declares who shall constitute the board of supervisors of elections, and makes it the duty of such board "to open and compare the ballots."

Section 50 declares "that it shall be the duty of the board of supervisors of election, within *five days* from the date of receiving the sealed boxes," &c.,      .      .      "to make certifi-cates      .      .      of the exact number of votes cast in their county for each person, stating the office such person is voted for, and forward them to the Secretary of State," &c.

Section 54 declares "that it shall be the duty of the Sec-retary of State to forward certificates of election to such persons as may be ascertained to be elected to any office in this State, addressed to the board of supervisors," &c., "within *ten days* after receiving such returns of election from the supervising board of the county; and it shall be the duty of said board of supervisors to forward such election certificates to the persons entitled thereto."

It will be thus seen that, allowing nothing for the time consumed by the inspectors in counting the ballots, nothing for the delays incident to the transit of the returns from the board of supervisors to the Secretary of State, and of the certificate from him back to them, seventeen days may elapse between the day when the votes are cast and the time when the board of supervisors receive the certificate of election, and still no official dereliction be chargeable to any one. The statute containing these provisions was enacted in 1873.

A different system was established by the Code of 1852, and preserved by the Revised Code of 1867.—See Part 1, Title 6, Chap. 3, Art. 3; Sections 226 to 229 of Code of 1852; 270 to 273 of Revised Code. Under that system, it was made the duty of the sheriff and certain other persons to assemble on the Saturday succeeding the election on Monday, and "make a correct estimate from the returns of the votes from the several precincts in his county, of the whole number of votes given therein for each office, and the person to whom such votes were given." Certain duties, in regard to such estimate, were then prescribed, and among others, the returning officer was required to make a certificate, the substance of which was to declare who were elected to the various offices filled by the county. It was then declared— section 273 (229)—that "the persons having the highest number of votes . . must be declared duly elected to such offices."

Part and parcel of the system of the Code of 1852, preserved in the Revised Code, is section 162 (123), which, in reference to bonds of sheriffs and some other officers required to be filed in the office of the judge of probate, limits the time within which they must be filed to "fifteen days after such election or appointment."

Section 164 (125) declares that "if any officer of this State required by law to give bond, fails to file the same in the proper office within the time fixed by the four preceding sections, he vacates his office, and in such cases it is the duty of the officer in whose office such bond is required to be filed, at once to certify such failure to the appointing power, and the vacancy must be filled as in other cases."

It will be readily seen that in these two systems, there is provided a substantially different mode of declaring who are elected. The one was by county officers, and ascertained and declared on the Saturday next succeeding the election on Monday. The other requires the certificate of the Secretary of State, which, without fault in any one, may be delayed seventeen days or more after the day when the election is held.

The word election is found in many sections of the Code. See the following sections: 215 (174) to 223 (181); also, 233 (191), 236 (193). It is also found in the following sections of the act "to regulate elections in the State of Alabama," approved April 22d, 1873, viz: Sections 5, 6, 7, 8, 10, 11, 13, 18, and probably others. Also, in the act of the same title, approved March 3d, 1875, sections 5, 6, 7, 8, 10, 13, 17, 44. It is manifest that in each instance above, when the legislature employ the word election, they mean the act of casting and receiving the ballots, the day and time of voting. It is equally manifest that when the legislature incorporated in the Code of Alabama, Article 3, Chapter 1, Title 5, Part 1, sections 157 (118) to 172 (133), they employed the word election in the sense given above, the act of casting the ballots.

Section 162 of Revised Code has never been expressly repealed, and there is no provision of any subsequent statute so repugnant to its provisions as to operate its repeal by implication. According to all rules of construction, we must construe that section as we would have done when the Code was first adopted, without any reference to subsequent statutes, which seem to enlarge the time within which the result of county elections must be made known.

The primary meaning of the word election is choice—the act of choosing. We think the legislature, in the section under discussion, employed the word election in this sense, and that it relates to the time when the ballots are cast.

A question arises, how can a sheriff elect file his bond in the office of the judge of probate within fifteen days after the election when his election may not be known or officially certified until more than seventeen days after the election? Such bond can not be properly filed before it is approved.— Rev. Code, section 165. And we are not prepared to affirm that it is the duty of the judge of the supreme court, chancellor or circuit judge to approve such bond before the Secretary of State has given ["forwarded"] the certificate of election, under section 54 of the act of April 22, 1873. It is not necessary that we should decide this question. The result of county elections is generally, if not invariably, known soon after the board of supervisors shall have opened, compared and counted the ballots. Possibly the result of the election will be, by such action of the supervisors, sufficiently ascertained and known to justify the party claiming to be elected in tendering his official bond for approval, and to authorize the judge to whom it is presented for approval to act upon it. But, as we have said, we do not decide this question.

It will be seen by what we have stated above that very

great hardships may fall on officers, whose election by the people is undisputed. We find the law thus written. It has doubtless occurred through oversight in the legislature. Substantially the same embarrassing defects are found alike in the election laws of 1873 and 1875. They have grown out of the fact that while the legislature have enlarged the time within which the result of elections must be officially made known, they have given no additional time within which to file official bonds. Such oversight or hardship does not authorize us to declare section 162 of the Revised Code to be inoperative, or to give to it a construction different from what was its true meaning when it was enacted.

In the case of *Sprowl v. Lawrence*, 33 Ala. 674, the question was whether the bond of a sheriff, executed, approved and accepted more than fifteen days after his election, was a valid statutory official bond. We held that it was under section 171 (132) of the Revised Code. In that case, there had been no certificate of vacancy, and no appointment of a successor. The sole question was whether the sheriff and his sureties were liable on such bond to the statutory remedies for his official defaults. We held that he was so liable. We went beyond the wants of that case, and declared that " the failure of a legally elected sheriff to file his bond within the time prescribed, does not, by its unaided force, operate his removal from office ; and that a bond executed by him more than fifteen days after his election, and before any step or proceeding on the part of the State to effect his amotion, must be considered the bond of an " officer " within the meaning of section (132) 171 of the Code. We added, " What act or proceeding would be necessary to effect his removal from office, is a question not now before us, and we do not decide it."

The language employed in that case, left on the mind of the legal profession the impression that, in the case stated, some judicial proceedings, instituted for the purpose, were necessary to declare the office vacant. All that was said, pointing in that direction, was dictum, not called for by any thing presented by the record. The elected sheriff had given the bond and had *acted under it.* He thus brought himself directly within the provisions of section 171 of the Revised Code, and parties aggrieved by his official misconduct were entitled to all the remedies which might have been maintained on an official bond, " executed, approved and filed according to law." We did not say then, nor do we now, whether, under any judicial proceedings, a sheriff, whose bond has been given, approved and filed after the expiration of the time within which he is required by law to file the

same—no certificate of vacancy being given, and no appointment of a successor made in the meantime—can be removed from such office. That question was not before our predecessors, and is not before us.

In the case of the *State ex rel. v. Ely,* Judge, 43 Ala. 568, our predecessors held that mere failure to give and file an official bond within the prescribed time, does not, under section 164 of the Revised Code, *ipso facto,* vacate the office of a tax collector. Referring to *Sprowl v. Lawrence, supra,* this court said: "It is there decided that an officer is invested with his title to an elective office by virtue of his election, and the statute providing that on failure to file his bond within the given time, 'he vacates his office,' operates as a defeasance, and not as a condition precedent." In this last case, it was decided that the relator had not vacated his office, although the time had expired within which the statute required him to file his bond, and although it was alleged a successor had been appointed. The court ruled that there must be judicial proceedings and declaration of vacancy before a successor can be appointed; and because the record did not show this, the alleged appointment was declared invalid, and the elected officer was adjudged to be the rightful tax collector; and the court awarded a *mandamus* to compel the judge of probate to approve the bond of the latter.

The relator in this cause has heretofore made application to this court for a *mandamus* to compel the judge of the circuit court to approve his official bond. The writ was refused on the ground that, if relator had any remedy, it was not *mandamus.* The court added, inquiringly, "Can it be said the relator has a clear legal right to an approval of an official bond, in the face of a statute declaring he has vacated his office by a failure previously to file his official bond? The statute certainly casts a cloud on his title, which the approval of his official bond would not remove. We are aware of what was said as to the construction of this statute in *Sprowl v. Lawrence,* 33 Ala. 674; *State v. Ely, supra*; and *Ex parte Candee, supra.* When the question shall directly arise, we will not feel bound to follow these decisions, if they are not in this respect *dicta.*"

In the case of *Thompson v. Holt,* 52 Ala. 491, the regularity and legality of the appointment of Holt, and his consequent right to the office of judge of probate, depended on the further inquiry, had the office become vacant by Thompson's failure to give an additional bond, under sections 175 to 178 inclusive, Revised Code? Under the address of four members of the court of county commissioners, Thompson had been required by the judge of the circuit court to give an

additional bond. The ten days expired and no bond was tendered by Judge Thompson, which the circuit judge approved. He thereupon certified the vacancy to the Governor, under section 177 of the Revised Code, and the Governor appointed Holt his successor, who had given bond and qualified. Proceedings were instituted by Holt against Thompson to compel the delivery of books, papers, &c., under section 194 of the Code. It will be observed that on the question we are considering, there is no material difference between sections 164 and 177 of the Revised Code. Speaking of the effect of the failure of Thompson to give an additional bond, and the certificate of such failure to the Governor, this court said: "The failure to execute such additional bond is a forfeiture or vacation of the office, and on the circuit judge is imposed the duty of certifying the vacancy to the Governor, who has the appointing power, and is bound to fill it. These are conditions imposed by law when the respondent was elected and accepted the office—the one a condition precedent, which must have been performed before he could legally be inducted into the office; the other a condition on which continuance in office depended. 'If conditions in law, which are annexed to offices, be not observed and fulfilled, the office is lost forever,' for these conditions are as strong and binding as express conditions."

We think the policy of our statutes, as disclosed in Articles 3 and 4, Chapter 1, Title 5, Part 1, of Revised Code, was to provide a simple and speedy method of securing good and sufficient official bonds, of having them renewed when necessary, and in case of failure in either of these respects, of declaring and filling the vacancy. No machinery whatever is provided by law for a judicial investigation of the question of failure to execute or renew official bonds. Failure to *file*, under section 164, and failure to *give*, under section 177, Revised Code, each alike "vacates the office." Under section 164, it is made the "duty of the officer in whose office such bond is required to be filed, at once to certify such failure to the appointing power, and the vacancy must be filled as in other cases." When an officer has been required to give an additional bond, under section 177, and fails so to do, "the officer making the requisition must at once certify the same to the appointing power, by whom the vacancy must be filled."

It seems to us that the language of these sections of the Code repels all idea of judicial investigation as a prerequisite of certification or appointment. We think the apparent *dictum* in *Sprowl v. Lawrence, supra,* and the decision in the case of *State ex rel. v, Ely, supra,* are each erroneous expo-

sitions of the statutes, so far as they seem to require, in the given cases, judicial ascertainment of the vacancy before the appointment of a successor can be made. That abuses may be perpetrated under these sections, which would be corrected on *quo warranto*, is certainly within the range of possibility. We will not attempt to specify what abuses would justify such interposition. A failure to approve a sheriff's bond, tendered more than fifteen days after the election, and after a vacancy thus caused had been certified, and filled by executive appointment, is not an abuse which this court can remedy.

Judgment of circuit court affirmed.